HAYNES & LYONS *et al.* Appellees, *vs.* THE COUNTY OF COLES *et al.* Appellants.

*Opinion filed April 23, 1908.*

1. MECHANICS' LIENS—*when sub-contractors' liens are superior to claims of assignees of warrants.* Where warrants issued by a county to the contractor for building a court house are assigned to third parties, but the warrants are subsequently held void and judgment is entered against the county in the name of the contractor, for the use of the assignees, for the face value of the warrants, the sub-contractors who give written notice of their claims to the county officials before the judgment is paid are entitled to priority over the equitable claims of the assignees, in the absence of any element of estoppel.

2. SAME—*when a sub-contractor's lien becomes complete.* Under section 24 of the Mechanic's Lien act, relating to contracts for public improvements, when a sub-contractor gives written notice of his claim to the officials whose duty it is to pay the contractor, the sub-contractor's lien becomes complete as against any money, bonds or warrants not yet paid or delivered to the contractor.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

EDWARD C. & JAMES W. CRAIG, JR., CRAIG & KINZEL, and JOHN McNUTT, JR., State's Attorney, for appellants.

J. H. MARSHALL, and H. A. NEAL, for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was a bill in equity, filed in the circuit court of Coles county by the appellees, against the county of Coles, S. S. Goehring and R. R. Fuller, under section 24 of the Mechanic's Lien law, (2 Starr & Cur. Stat.—2d ed.—p. 2572,) to enforce sub-contractors' liens against the money due by the county of Coles to S. S. Goehring for construct-

ing a court house in said county. By leave of court all of the appellants, other than the county of Coles, S. S. Goehring and R. R. Fuller, intervened and claimed to be the owners of the money due S. S. Goehring for constructing the said court house, and denied that the appellees, as sub-contractors or otherwise, had a lien thereon. Answers and replications were filed and the case was heard, and the court entered a decree establishing liens in favor of the appellees for a sum aggregating $11,786.44, with interest from May 12, 1906, at five per cent per annum, and decreed that the appellants should pay the costs, which decree has been affirmed by the Appellate Court for the Third District, and a further appeal has been prosecuted to this court.

The appellants, other than the county of Coles, S. S. Goehring and R. R. Fuller, who will be designated as the intervenors in this opinion, claim to be the equitable assignees of the money due Goehring from the county of Coles upon his contract with said county for constructing said court house and contend that sub-contractors' liens did not attach to said money in favor of the appellees, and while numerous errors have been assigned upon the record, their claim, in the particular above stated, is the only question discussed in the briefs filed by them in this court.

Section 24 of the Mechanic's Lien law, so far as it applies to this case, is as follows: "Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor for a public improvement in this State, shall have a lien on the money, bonds or warrants due or to become due such contractor for such improvement: *Provided,* such person shall, before any payment or delivery thereof is made to such contractor, notify the officials of this State, county, township, city or municipality whose duty it is to pay such contractor of his claim by a written notice."

It appears from the pleadings and proofs found in this record that on September 20, 1898, S. S. Goehring entered into a written contract with the county of Coles to re-build

the court house of said county, as per certain specifications agreed upon between the parties, for the sum of $85,727; that the work was to be completed and the court house ready for occupancy within one year from the date of the contract; that the contract price was to be paid to Goehring as the work progressed, monthly, on the basis of eighty-five per cent of the value of the labor performed and material in place in the building, as estimated by the architect, in county orders bearing seven per cent interest per annum from date, and that the remaining fifteen per cent should be paid in county orders bearing seven per cent interest from the date of the completion of the building and its acceptance by the county board; that after said contract was executed between the county and Goehring, a partnership was formed between Goehring and Fuller to carry out the contract of Goehring with the county; that the work was commenced by Goehring & Fuller in the fall of 1898, and the court house was completed by Fuller (the firm of Goehring & Fuller having dissolved) and accepted by the county on September 7, 1900; that the county from time to time, and up to the completion and acceptance of the court house by the county, issued orders to S. S. Goehring, bearing seven per cent interest, to the amount of $84,582.03, which orders were negotiated by Goehring & Fuller, or by Fuller, at not less than their face value, and their proceeds were used in paying for labor and material which went into said court house; that $82,004.62 of said orders were sold by Goehring to the intervenors; that the county of Coles, after the court house was completed and accepted, refused to pay said orders, and an action of assumpsit was commenced in the circuit court of Coles county, in the name of S. S. Goehring for the use of the intervenors, and a judgment was rendered against the county of Coles for the sum of $95,204.31, which was affirmed by this court for $82,004.62, which case is reported as *County of Coles* v. *Goehring,* 209 Ill. 142, where will be found a full statement of the facts

leading·up to the litigation involved in this suit, many of which are not necessary to be re-stated in this opinion; and that subsequent to the affirmance of the *Goehring case* by this court the appellees served notice, under said section 24, upon the county clerk and county treasurer of the county of Coles of their intention to enforce liens under said section 24 of the Mechanic's Lien law, as sub-contractors.

In the case of *County of Coles* v. *Goehring, supra,* this court held that the orders which had been issued to Goehring and by him assigned to the intervenors were void, but permitted a recovery against the county of Coles, in the name of Goehring for the use of the intervenors, for the amount of the orders which they had purchased from Goehring, without interest, the difference between the judgment of the circuit court and the judgment in ·this court in that case being for the interest on said orders included in the judgment of the circuit court. At the time the suit in that case was pending in this court it was contended there could be no recovery against the county of Coles on account of the claims of appellees, as sub-contractors. This court, in disposing of that question, on page 170, said: "It is claimed by the plaintiff in error that this judgment cannot be sustained, because the proof shows that there were liens to the amount of about $12,000 filed by certain sub-contractors against the warrants and orders, or money, due the contractor upon the erection of the court house, as provided by section 24 of chapter 82 of the Revised Statutes, being the Mechanic's Lien act, (2 Starr & Cur. Stat.—2d ed.— p. 2572,) and which section 24 was recently passed upon by this court in *West Chicago Park Comrs.* v. *Western Granite Co.* 200 Ill. 527. So far as the warrants or orders are concerned, the liens can be of no avail, inasmuch as such warrants or orders are here held to have been invalid. This suit is brought for the purpose of determining whether the county is liable to pay to the contractor, for the benefit of the usees, the money due by the terms of the contract. The

filing of the claims for these liens cannot prevent defendant in error from obtaining judgment. A different question may arise when the time comes for the county to pay the money due upon the judgments. These claimants of liens, even if the defendant in error is indebted to them, would obtain nothing if the defendant in error should not be successful in this litigation. In other words, the success of the defendant in error in this litigation is for the benefit of the claimants of liens. The question here is whether the county owes money to the defendant in error, and not whether the county owes money to the lien claimants. The latter have no direct claim against the county. Their only claim is a lien upon the money that is to be paid to the defendant in error, and if the amount of the lien claims were deducted from the amount of the judgment and the claimants should enforce their liens against the money that would be coming to the defendant in error on this judgment, the defendant in error would be obliged to pay double the amount of the liens.—*Zimmerman* v. *Wead,* 18 Ill. 304; *Tedrick* v. *Wells,* 152 id. 214."

The question, therefore, for decision in this case is, the orders issued to Goehring and assigned by him to the intervenors having been held to be void and it having been held that the county of Coles is indebted upon the contract price of said court house in the sum of $82,004.62, which of the parties,—that is, the intervenors or the appellees,—have the prior and superior lien upon said fund to the extent of their respective claims?

While the evidence in this record shows that the money invested by the intervenors in said county orders was used in paying for labor and materials which went into the said court house and that a portion thereof was paid to the appellees upon their respective claims, there is nothing in the record to show that the appellees caused the intervenors to purchase said orders or that they knew that they had purchased them, or that the money paid to them by Goehring &

Fuller, or Fuller, upon their claims was derived from the sale of said orders to the intervenors by Goehring & Fuller, or by Fuller, at the time it was paid to appellees. There is, therefore, no element of estoppel in this case as against the appellees, but the question is one of priority between the intervenors and the appellees.

In the case of *Spalding Lumber Co.* v. *Brown,* 171 Ill. 487, this court had before it a case which involved the identical question which is here presented for decision, and the court there held that the sub-contractors' liens were superior to those of the equitable assignees of a portion of the contract price due the contractor. In that case the board of education of Kickapoo Union School District No. 22 had made a contract with H. A. Brown to erect a school house in said school district for the sum of $4398. Brown commenced the erection of the school house under the contract, but having failed to complete the same the school authorities took the matter out of his hands and completed the school house. After the school house had been completed there remained in the hands of the school district the sum of $1189.13 due upon the contract. Brown had given an order on the school district to the Spalding Lumber Company for $948 and another to Myers & Miller for $385, for work done or material furnished by them, respectively, and there was due other sub-contractors who held no orders something like $1000. These sub-contractors, subsequent to the date of the orders which had been delivered to the Spalding Lumber Company and to Myers & Miller, served notices for liens under section 24 of the Mechanic's Lien law, and the parties being unable to agree to whom the district should pay the $1189.13 remaining in its hands, due upon the contract for the completion of the school house, the school district filed a bill of interpleader in the circuit court of McLean county against the parties claiming said fund as the holders of orders from Brown or as sub-contractors. The court required the parties to interplead and settle their

rights to the fund, and upon the hearing it was held that the Spalding Lumber Company and Myers & Miller took nothing by said orders as against said sub-contractors, and that the sub-contractors had, by virtue of said section 24, liens upon said fund. The court, on page 492, said: "Under the above section of the statute a lien is conferred upon the person who may furnish material, etc., or labor, to any contractor, upon the money, bonds or warrants due or to become due to the contractor. In order to avail of the lien conferred the sub-contractor is only required to serve a notice, in writing, on the official before the money is paid or before the bonds or warrants are delivered to the contractor. Here the notices were served by the sub-contractors upon the school board before the money in question had been paid to the contractor, and, unless the plain provision of the statute is to be disregarded, the sub-contractors who furnished material are entitled to protection." And again, on page 493, in answer to the argument that the giving of said orders operated, in equity, as a transfer of so much of the funds due or to become due the contractor as was specified in said orders, the court said: "Under section 24 of the Lien law it is plain that the lien is created by the performance of the labor or the furnishing of the materials, and the lien of the sub-contractor becomes perfect, as to all funds not paid over or bonds or warrants not delivered, upon service of notice on the officials. The statute makes no provision for the giving of orders by the contractor which may operate as an assignment of any part of the fund agreed to be paid for the construction of the building, nor is there any provision of the statute authorizing the school board to accept such orders, and we see no ground upon which it can be held that an assignment of the fund, by order or otherwise, can defeat the lien created by statute. It is not pretended that the claim of the contractor was negotiable or that appellants are entitled to protection as purchasers of a negotiable instrument. The claim is, that the orders are to

be regarded as an equitable assignment of the money due or to become due from the school board to the contractor. Treating the orders as an equitable assignment, they would not defeat the lien of the sub-contractors. The law is well settled that an assignee takes a non-negotiable instrument subject to all the infirmities which exist against it in the hands of the assignor, excepting latent equities of third persons. (*Sumner* v. *Waugh,* 56 Ill. 531; *Silverman* v. *Bullock,* 98 id. 11; *Himrod* v. *Gilman,* 147 id. 293; Daniell on Neg. Inst. sec. 726*b;* Pomeroy's Eq. Jur. secs. 708, 714.) The claim of the contractor against the school board, when he executed the orders, was a mere chose in action, and the appellants took the assignment of the claim subject to all equities existing in favor of those who had liens under the statute. The appellants, as assignees of the contractor, stand in his shoes, and they occupy no better position than he would have occupied if he had retained the claim in his own hands. There is only one mode of obtaining a lien upon the fund, and that is by serving the notice on the officers required by the statute. When the notice is served the officers are compelled to retain in their hands a sufficient sum to pay the liens, and should there not be enough to pay the claims in full, then those serving notice are entitled to share in the fund *pro rata.* If, however, a contractor could defeat the lien of a sub-contractor by merely transferring the fund due or to become due, by giving an order, the statute creating a lien in favor of a person furnishing labor or material to a contractor for a public improvement would become a nullity, as the fund might be transferred immediately upon making the contract to erect the building."

The *Spalding Lumber Co. case* is decisive of the question raised by the intervenors in this case, and that case must control the decision of this case, unless it is to be overruled. At that time the question was thoroughly considered, and we are not disposed at this late date to recede from the position therein taken.

Counsel for appellees have assigned cross-errors, and have questioned the correctness of the judgment of the Appellate Court and the decree of the superior court as to the allowance of interest on four of the claims they represent. The decree of the circuit court, which was affirmed by the Appellate Court, allowed all claimants interest from the date of the entry of the decree, May 12, 1906. Appellees insist that they should be allowed interest on four claims from September 7, 1900, the date the court house was accepted by the county board of Coles county. The Appellate Court, in its opinion, states that it cannot find from the abstract that there was any fixed time for the payment of the contract price for the material. We are of the opinion that the abstract in this court does furnish some evidence as to when the payments were to be made as to part of these four claims, but there are other claims than the four insisted upon in appellees' argument that also seem to have a definite date for the payment of the money. However that may be, it is impossible for us to ascertain from the abstract and briefs, with certainty, even by comparing them with the record, the exact amount due each of the four claimants in question at the date of the acceptance of the court house · by the authorities of Coles county. Partial payments on some of these claims were made from money obtained from county orders and other payments were made from the proceeds of the bankrupt estate of Fuller. It is not the duty of this court to search the record, or even the briefs and abstract, to figure out the results asked for on these cross-errors. Sufficient data should be furnished us by counsel to justify us in holding that an error was made in this regard. The trial court, so far as we are advised from the abstract and briefs, may have taken this interest question into account in making up the amounts due these claimants.

Finding no error in the record the judgment of the Appellate Court will be affirmed.  *Judgment affirmed.*

Dunn, J., took no part in the decision of this case.