In re FREEMAN & BROOKS.*

ALEXANDER LUMBER CO. v. ÆTNA CASUALTY & SURETY CO. et al.

(Circuit Court of Appeals, Seventh Circuit. May 29, 1924. Petition for Rehearing Overruled August 15, 1924.)

No. 3315.

1. Judgment ⟨⟩720—Matter held concluded as between parties in subsequent litigation.

Where, in litigation in the state courts between the surety on a building contractor's bond and a furnisher of materials, it was determined that the surety had an equitable right to have all payments made to the materialman from funds received for the building applied on materials furnished for such building, and that the materialman had received sufficient to pay its claim, such decision is conclusive, as between the parties, and though the claimant served notice of lien under the state statute it cannot assert a claim to a fund still due the contractor as against the surety, who has paid other claimants.

2. States ⟨⟩108½—Filing claim to fund held sufficient notice of lien.

Under Mechanic's Lien Law Ill. § 23 (4 Jones & A. Stats. Ann. 1913, p. 3979), giving one furnishing materials to a contractor for any public improvement a lien on money due the contractor on notice to the disbursing officer at any time before the money is paid over, the filing of a claim to money which has been paid over by such officer to the trustee in bankruptcy of the contractor, and is held by him, is sufficient notice of lien.

3. Subrogation ⟨⟩1—Not matter of contract, but of equitable right.

The right of "subrogation" is not a matter of contract, but is an equitable right accruing to one obligated, as surety or otherwise, whereby on the making of the payments he succeeds to all of the rights of the person to whom he made the payment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

4. Subrogation ⟨⟩33(3)—Surety as assignee of claims paid, though not paying full face value, held entitled to subrogation.

A surety for a building contractor, which paid and took an assignment of claims against the contractor which it was obligated to pay, held subrogated to the right of the claimants to liens, so far as necessary for its reimbursement, though it did not in all cases pay the full face value of the claims.

Evan A. Evans, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Illinois.

In the Matter of Freeman & Brooks, a partnership, bankrupt; John W. Stipes, trustee. The Alexander Lumber Company appeals from an order allowing the claim of the Ætna Casualty & Surety Company to a fund. Affirmed.

Walter T. Gunn, of Danville, Ill., and Donald C. Dobbins, of Champaign, Ill., for appellant.

Louis L. Dent, of Chicago, Ill., for appellees.

*Certiorari denied 45 S. Ct. 126, 69 L. Ed. ——.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Bankrupts built for the board of trustees of the University of Illinois a chemistry building under a written contract, and pursuant to the provisions thereof entered into a bond, on which the appellee surety company (hereinafter called "surety company") was security. Appellant furnished materials to bankrupts to the extent of $15,790.13 for the chemistry building, and a much larger amount that was used on other jobs.

During the progress of the work, bankrupts, from moneys received from the board of trustees, paid to appellant over $26,000, without direction as to application, but which was applied by appellant on contracts with bankrupts other than that with the board of trustees. When the building was completed, bankrupts owed to various persons, other than appellant, for materials used in the chemistry building, over $13,-573.62. There was due from the board of trustees $14,517.52, and appellant was claiming payment for all materials furnished by it for the chemistry building, and on April 19, 1916, served on various state and university officials notice of lien under the provisions of the Illinois Mechanic's Lien Law.

[1] About September 1, 1916, appellant, in the name of the board of trustees, sued bankrupts and the surety company on the law side of the Champaign county, Ill., circuit court, for the full amount of the claim for which it had served notice of lien. Various other materialmen sued the surety company in the same court on its bond, and it settled with all materialmen, other than appellant, taking to itself assignments of their claims; but it commenced against appellant, on the equity side of the Champaign county circuit court, a suit to enjoin appellant's suit at law. In the equity suit, appellant filed a cross-bill, setting up the rights claimed in the suit at law, and asked that the surety company be decreed to pay its claim.

A preliminary injunction was granted the surety company, and the litigation in the equity suit was finally terminated by a decree entered in the Champaign county circuit court, under the direction of the Supreme Court of Illinois, which remanded the cause to the circuit court, with directions to enter a decree granting the injunction prayed for in the surety company's bill. 296 Ill. 500, 129 N. E. 871. The final decree in the circuit court dismissed appellant's cross-bill and perpetually enjoined appellant from prosecuting its suit at law or any other suit against the surety company upon its bond.

Freeman & Brooks went into voluntary bankruptcy, and the board of trustees paid to the trustee in bankruptcy, who is a coappellee with the surety company, the balance due on the chemistry building contract. On petition of the trustee in bankruptcy, appellant and the surety company were cited to appear and disclose their claim to the fund coming from the board of trustees.

Appellant, by answer and amended answer, set out its claim for a lien, asserting its right to a prior claim to the fund because it was a materialman, and the only one of the materialmen who had perfected its lien. The surety company set up by petition the terms of the building contract and its bond, and the various steps that preceded its payment of the claims of the materialmen listed in its petition. The list did not include the appellant, but included all other materialmen who were left unpaid by bankrupts.

A hearing was had before the referee, whose findings were adverse to appellant and favorable to the surety company. The findings were approved by the District Court; hence this appeal.

In the equity suit in the state court, the master found that payments made by bankrupts to appellant, from funds arising from the chemistry building, were sufficient in amount to discharge the debt due appellant for materials furnished for that building, had such payments been so applied. No objection was made to that finding of fact, but an objection, which was permitted to stand as an exception, was made to the master's report, because it did not find that appellant did not know the source of the funds paid to it by bankrupt. The circuit court made no findings of fact, but sustained the exceptions to the master's report, and dismissed the surety company's bill for want of equity, and that action the Supreme Court found was erroneous. The Supreme Court found that the record before it "produces the unavoidable conclusion that payments to the amount of defendant in error's" (appellant's) "claim for materials furnished for the chemistry building were, in fact, made from funds arising from that building."

In the surety bond the individual members of the bankrupt firm were principals and the surety company was surety. The

board of trustees of the University of Illinois was obligee. The condition recited the contract to build a chemistry building, wherein it was provided that "contractors shall give, within five (5) days after execution of said contract, a surety bond in the full amount of said contract, guaranteeing the faithful performance of the contract in accordance with the terms thereof, and including a provision providing for the protection of subcontractors, materialmen, mechanics, workmen, or other persons furnishing material or labor, to the same extent as though they were parties to the bond and agreement."

The defeasance clause provided that, if bankrupts should perform their contract, and save the board of trustees harmless, and turn over the building and the premises free and clear of any and all claim or claims for infringement, etc., pay in full all indebtedness to any subcontractor, etc., then the obligation to be null and void. The bond further provided, in the defeasance clause, that it was not only for the protection of the board of trustees, but was also "for the protection of the said subcontractor, who shall have the right to enforce the obligation of this agreement and bond against the said principals and surety in the same manner and to as full an extent as though they were parties to this bond and agreement; it being understood and agreed, however, that this protection shall not extend to any party or parties to whom the said principal is not directly indebted by reason of the furnishing of labor or material in or about the erection or construction of said building."

It is stipulated in the record that the surety company made the payments shown in the record to the several persons, as claimed, and that, if further evidence was taken, it would show that those parties were materialmen who had furnished labor or material in the construction of the chemistry building.

Appellant urges four reasons for reversal: First, that it had an unpaid claim for material used on the chemistry building, for which it was entitled to prior payment from the funds coming to the trustee in bankruptcy from the board of trustees because it alone had perfected its lien by giving the required notice; second, that, because it appears that the surety company compromised and paid something less than the face of the claims due the several materialmen, the surety company is not entitled to be subrogated to their rights; third, that appellee surety company did not, nor did any of the materialmen with whom it settled, perfect a lien, and that therefore the surety company is not entitled to any priority or to anything as against appellant; fourth, appellant claims that, if it is not entitled to a priority, it is at least entitled to prorate with the surety company in the fund coming from the board of trustees.

The suit at law in the state court was brought by appellant, for its use, in the name of the obligee in the bond and against the obligors for its own benefit, on the theory that it was a materialman, unpaid by bankrupts for materials furnished for the chemistry building contract. That was the same theory upon which it filed its notice of lien. The equity case in the state court sought an injunction against appellant upon the theory and claim that appellant had been paid in full from the chemistry building fund, and upon that theory the surety company prevailed and obtained a permanent injunction. The Illinois Supreme Court also determined that, as between the appellant and the surety company, as one having an equitable interest in the disposal of the funds coming from the chemistry building contract, the ordinary rule, permitting a payee to make application of funds as it might see fit, where no direction was given by the payer, would not apply.

Appellant relies for its lien upon section 23 of the Illinois Mechanic's Lien Law, being section 7161, 4 Jones & Addington's Ill. Stats. Ann. 1913, p. 3979. This section was section 24 of the Mechanic's Lien Law of 1895, p. 226, and is so referred to in some of the Illinois cases. Under section 23 a lien was given to those who furnished to the contractor materials, etc., for any public improvement. The lien attached to the moneys, etc., due the contractor by the furnishing of the materials, etc., and upon the giving of a notice at any time before the money was paid over the disbursing officer was required to hold enough money to pay the claims for which notice was given. Spalding v. Brown, 171 Ill. 487, 492, 49 N. E. 725; Haynes et al. v. County of Coles, 234 Ill. 137, 143, 84 N. E. 747, 14 Ann. Cas. 1055.

On April 19, 1916, appellant gave notice of its lien to the board of trustees. From that date until it was, on October 21, 1921, cited to appear in the bankruptcy court and establish its claim, it took no steps as against the board of trustees to make its lien effective. During nearly all of the intervening time it was engaged in litigation

in the state courts of Illinois in an attempt to collect from the surety company the money due from the bankrupt for the same materials furnished for account of the chemistry building.

Section 23 only required that the money should be held to pay the claim on which notice of lien had been given until the claim was admitted or by law established. While the bankrupt, just before the service of the notice on the board of trustees, made a statement that there was $15,719.30 due to appellant for materials furnished on the chemistry building, and directed payment thereof to appellant, yet the question whether there was anything actually due was disputed by the surety company in the litigation in the Illinois courts, and that litigation determined the fact that there was nothing due from bankrupt to appellant for materials furnished for the chemistry building.

There was no time specified in section 23 within which an action to establish a claimant's right was to be commenced, but section 23 was amended in 1917 (Session Laws 1917, p. 566), and again in 1919 (Session Laws 1919, p. 642; Callaghan's Ill. Laws Ann. 1917–20), and the latter amendment provided, among other things, that the person so claiming the lien "shall, within thirty (30) days after filing notice with the state official, commence proceedings by bill in equity for an accounting, making the contractor to whom such material," etc., "was furnished, party defendant, and shall, within the same period notify the official of the state of the commencement of such suit by delivering to him a certified copy of the bill filed. * * * It shall be the duty of the state official after the sworn statement has been filed with him, to withhold payment of a sum sufficient to pay the amount of such claim, for the period limited for the filing of suit, unless otherwise notified by the person claiming the lien."

Appellant took no steps to establish his rights under the amendment. That amendment required not merely a written notice, but a sworn statement. It is evident, from the holding in Spaulding v. Brown and Haynes v. County of Coles, supra, that all the subcontractors and materialmen have liens conferred upon them by the statute by the mere act of furnishing the material, etc., for the public improvement, and that such liens could be availed of by giving the notice provided in the statute at any time before the money is paid over; it being the obvious purpose of the statute that all ma-

terialmen, etc., should be paid from the funds due to the contractor.

The fund in the hands of the board of trustees was never paid to bankrupts, but, after bankruptcy, on demand and order of the bankruptcy court, it was paid over to the trustee in bankruptcy, and appellant and the surety company, on citation, went into the bankruptcy court and set up their rights, each asserting a lien to the fund. It is not asserted that the payment to the trustee in bankruptcy discharged any lien. Appellant asserts that it completed its lien by notice, and that neither the surety company, nor those whose claims it purchased had any right to a lien, because no notice was ever given by any of them. No creditor of bankrupt other than appellant has appealed from the decree of the bankruptcy court entered May 7, 1923.

[2] We are of opinion that, in so far as the rights of lien claimants are concerned, the rights of appellant and the surety company must be held to be the same as though the fund was in the hands of the board of trustees. When the surety company filed its petition in bankruptcy, it gave notice and asserted its lien in ample time, and the decree of the bankruptcy court as to the funds from the board of trustees must stand as against everybody, unless it can be in this case successfully assailed by appellant. We are of opinion that, so far as appellant is concerned, the decree is unassailable for the reason that the question as to whether or not bankrupts were indebted to appellant for materials furnished upon the chemistry building was directly involved in the litigation in the Illinois courts; and the Supreme Court made two findings that are binding everywhere as between appellant and the surety company, where the right to the fund in question is involved.

The court said (Alexander Lumber Co. v. Ætna Co., 296 Ill. 500, 506, 129 N. E. 871, 873); "The fair construction of this provision of the bond is that the surety thereon has a right to have payments to the materialman from funds derived from the building covered by the surety contract applied to the account for materials furnished for said building." And further: "The doctrine that a surety in a case such as the one at bar has a special equity in the funds arising from payments made under that contract is based upon sound principles of equity and fair dealing and is supported by numerous authorities."

The surety company had and has an interest in the fund not only by reason of the

liens under the statute, to which it was subrogated, but also by reason of its equitable rights under its bond. The bond, under which it paid the claims of the several materialmen, is the same bond upon which appellant sued. It would be a strange perversion of equity and justice to defeat appellant, as was done in the state courts, because it had been once paid from the fund, and yet permit it to have priority in that fund here over the same antagonist.

[3] The right of subrogation is not a matter of contract, but is an equitable right accruing to one obligee as surety or otherwise to make payments, whereby, upon the making of the payments, the one so obligated succeeds to all of the rights of the person to whom he made the payment. Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 549, 8 Sup. Ct. 625, 31 L. Ed. 537; Prairie State Bank v. U. S., 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; German Savings & Loan Soc. v. Tull, 136 Fed. 1, 6, 69 C. C. A. 1; First Nat. Bk. v. City Trust, etc., Co., 114 Fed. 529, 533, 52 C. C. A. 313.

[4] There are cases that hold that the settled law is that payment of the whole debt on which a surety is liable is essential to subrogation. Columbia Finance & Trust Co. v Ky. Union Ry. Co., 60 Fed. 794, 796, 9 C. C. A. 264; Pa. Co., etc., v. Phila. Co. et al. (C. C. A.) 266 Fed. 1, 8. The language of those cases, abstractly considered, might seem to support appellant's contention, as appellee surety company did not pay the full face of the claim, and therefore it has no right to subrogation. No such construction can be placed upon the cases cited, because the facts there showed that one obligated to make payments paid only a part of the whole claim which it was obligated to pay, and did not take a transfer of the whole of the claim. The part of the claim which it did not pay was not extinguished, whereas in the case at bar the surety company, while paying in some cases perhaps something less than the face value of the claims, wholly extinguished the rights of the several holders of the claims assigned to it and became itself the only creditor. Under such circumstances, the reasons suggested in the cases above cited why there could be no subrogation are without force.

In Union Stone Co. v. Board of Chosen Freeholders, 71 N. J. Eq. 657, 65 Atl. 466, 471, the court, discussing the scope of subrogation, held that one may be subrogated to the extent necessary to reimburse himself for his necessary outlay, but no further,

citing Prairie State Nat. Bk. v. U. S., 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; First Nat. Bk. v. City Trust Co., 114 Fed. 529, 52 C. C. A. 313. That is the extent to which the surety company asks relief in this case. The surety company is entitled to be subrogated to the liens to which the several materialmen, whose claims it purchased, had.

It is unnecessary to discuss the other reasons urged for reversal. Whether appellant is a general creditor is a question not before us.

Decree is affirmed.

EVAN A. EVANS, Circuit Judge (dissenting). In P. McGarry & Son v. Central Trust Co. of Illinois, 240 Fed. 400, 153 C. C. A. 326, this court held that, where a contractor became a bankrupt owing individuals for material and labor, and also a surety company that had under its contract paid for certain labor and material, the individuals and the surety company were entitled to share the fund in the hands of the trustee in bankruptcy pro rata and in preference to general creditors. Applying this rule to the facts here present, as set forth in the majority opinion, the conclusion seems unavoidable that appellant's and appellee's claims should be recognized as on a parity, unless modified by the action or nonaction of either party in perfecting its lien. That appellant seasonably took the necessary action to perfect its lien is not denied. That it had a lien upon the facts stated is also established. Bankers' Surety Co. v. Maxwell, 222 Fed. 797, 138 C. C. A. 345.

Nor has our attention been called to any Illinois decision which would justify us in denying to appellee its right to a lien. The notice (in the form of a petition) which it gave the trustee in bankruptcy after the money had been turned over by the trustees of the University of Illinois, was sufficient under section 23 of the lien statute. Counsel seem to agree that the amendments to the lien laws (Session Laws 1917, p. 566, and Session Laws 1919, p. 642) were not intended to, and could not, affect prior existing liens, and with this position I agree.

With both claimants entitled to, and in fact holding, mechanic's and materialmen's liens against bankrupt, a division of the fund between claimants would necessarily follow, were it not for the contention that this issue was determined adversely to appellant by the Illinois Supreme Court. The Illinois decision did not and could not go further than to hold upon the facts appear-

ing that appellee was not liable to appellant upon the surety contract for the latter's claim against bankrupt.

More specifically stated, the Illinois decision is res adjudicata only as to appellee's liability under the particular surety contract there under consideration. Liability was denied because of the terms of the contract. The decision did not deny appellant's right to a lien against the fund in the hands of the University trustee, for such an issue was not before it. Nor was there any issue before the court as to priority between various labor and material claimants by virtue of partial payments out of the University building fund. If any language appears in the opinion bearing upon the issues of liens or priority of liens, it was clearly obiter. Black, Law of Judicial Precedents, § 55; 7 R. C. L. 1003, 1004; People v. San Luis O. Bank, 159 Cal. 65, 112 Pac. 866, 37 L. R. A. (N. S.) 934, Ann. Cas. 1912B, 1148; Radford v. Myers, 231 U. S. 725, 34 Sup. Ct. 249, 58 L. Ed. 454.

Each party having a lien for materials furnished, and the fund lienable being in court, the parties should in my opinion share pro rata therein.