### In re PETROLEUM PIPING CONTRACTORS, INC., Debtor.

**Bankruptcy No. 96–61379.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division at Gary/Lafayette.

Feb. 28, 1997.

---

Samuel T. Miller, Highland, IN, for Debtor–In–Possession.

Debra Moss, Highland Park, IL, for WaterPro Supplies.

### MEMORANDUM OPINION AND ORDER [1]

KENT LINDQUIST, Chief Judge.

*I*

### STATEMENT OF PROCEEDINGS

This case is before the court on the "Motion to Obtain Relief from Stay of Claim Enforcement and/or for Determination of Abandonment of Assets and for Statement of Lack of Interest" (hereinafter: "Motion") filed on June 27, 1996 by WaterPro Supplies Corp. (hereinafter: "WaterPro") versus the Chapter 11 Bankruptcy Estate of Petroleum Piping Contractors, Inc., Debtor–in–Possession (hereinafter: "Debtor").[2] At the prehearing conference on this matter held on July 31, 1996, the parties orally agreed that the case could be decided based on a Stipulation of Facts. After the prehearing conference on this matter, the Court on August 1, 1996, ordered the parties to file a Stipulation of Facts by September 2, 1996 regarding WaterPro's Motion. The parties submitted their Stipulation of Facts to the Court on October 28, 1996 (hereinafter: "Stipulation").

*II*

### STATEMENT OF FACTS

#### A.

#### *The Motion by WaterPro*

WaterPro's Motion seeks relief as to two separate, and unrelated construction projects in the State of Illinois: (1) the New Lenox Project; and, (2) the Arbury Project. Rhetorical Paragraphs One through Five of the Motion, sets out the contractual relationship between WaterPro and the Debtor as to both projects as follows:

1. That this is a Motion to obtain relief from stay provided in § 362(d) of Title 11, United States Code, and Fed R. Bankr.P. 4001 and/or for determination of abandonment pursuant to § 554(b).

2. That on June 13, 1996, the Debtor above named filed a Petition for relief under Chapter 11 of Title 11, United States Code.

3. That WaterPro is a supplier of underground utility material, doing business at 220 Westgate, Carol Stream, IL.

4. That WaterPro is the holder of certain secured claims in construction project funds.

5. On or about January 22, 1993 WaterPro entered into a contract with Petroleum Piping Contractors to provide and furnish underground utility material to the Debtor for use on construction projects on which the debtor was performing. A true and correct copy of the credit application submitted by debtor is attached hereto as Exhibit "A". WaterPro furnished Debtor with all of the materials required by Debtor's contracts and the materials were accepted upon the premises where said projects were being constructed and incorporated in and formed a part of said improvements.

WaterPro's Motion, as it relates to the Village of New Lenox Project ("New Lenox Project"), states as follows:

#### The New Lenox Project

---

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52 as made applicable by Bankruptcy Rule 9014 and 7052.

2. The Court takes judicial notice that the Debtor filed its voluntary Chapter 11 Petition on June 13, 1996.

6. (a) Water–Pro provided underground utility materials to the debtor for use on the construction project commonly known as the Wastewater Treatment Plant No. 2 Expansion for the Village of New Lenox, Illinois, Project No. 72824 ("the New Lenox Project") under the prime contract of Semford Contracting Co., Inc. with the Village of New Lenox dated May 8, 1995.

(b) On or about February 1, 1996 WaterPro completed all of the work required of it under the terms of its contract with Debtor on the New Lenox Project and there became due to Movant the sum of $16,431.25 on this project. After all just credits have been deducted, the sum of $16,431.25 still remains due and owing to Movant.

(c) Pursuant to Sections 770 ILCS 60/23 and 30 ILCS 550/1 and 2 of the Illinois Compiled Statutes, WaterPro has filed a Mechanics' Lien claim against the project funds and a claim against the payment bond submitted by Semford Contracting and United States Fidelity and Guaranty Company.

(d) Attached hereto as Exhibits "B" and "C" are copies of the Movant's mechanics' lien claim and bond claim on the New Lenox Project.

WaterPro's Motion, as it relates to the Arbury Waste Water Reclamation Facility Project ("Arbury Project"), states as follows:

**The Arbury Wastewater Reclamation Facility**

7. (a) WaterPro provided underground utility materials to the debtor for use on the construction project commonly known as the Arbury Wastewater Reclamation Facility at Frankfort, IL (the "Arbury Waste Water Reclamation Facility") under the prime contract of Jay Dee Contractors with the Citizens Utilities of Illinois.

(b) On or about March 21, 1996 WaterPro completed all of the work required of it under the terms of its contract with Debtor on the Arbury Waste Water Facility Project and there became due to Movant the sum of $4,791.14 on this project. After all just credits have been deducted, the sum of $3,425.99 still remains due and owing to Movant.

(c) Pursuant to Sections 770 ILCS 60/23 and 30 ILCS 550/1 and 2 of the Illinois Compiled Statutes, WaterPro has filed a Mechanics' Lien claim against the project and a claim against the payment bond submitted by Jay Dee Contractors and Liberty Mutual Insurance Company.

(d) Attached hereto as Exhibits "D" and "E" are copies of the Movant's mechanics' lien claim and bond claim on the Arbury Waste Water Reclamation Facility Project.

8. WaterPro and the general contractors and owners have now reached a tentative settlement of the aforementioned claims and it is understood that the Debtor does not dispute that WaterPro's claims are valid, due and owing.

9. That by operation of § 362(a) of Title 11, Movant is stayed from enforcing its Mechanics' Lien and bond claims against the aforementioned projects, the proceeds thereof and/or against all necessary parties to be named and served notice thereof as required pursuant to the Illinois Mechanics' Lien and bond claim statute.

10. That relief from the automatic stay is necessary for the following reasons: The owners and general contractors described herein are holding funds which have been earned by WaterPro by the delivery of building material to the construction projects identified above. Such funds have been earmarked by said parties for the payment of the materials supplied by WaterPro. Prior to the debtor filing its petition in the instant cause said owners and contractors were ready and willing to pay to WaterPro the amounts claimed by Movant or in the alternative Movant is prepared to proceed to foreclose on its mechanics lien and bond claims. Even though the debtor has no proper or sustainable interest in the project funds it seeks to claim those funds as its own as the assets of the estate. Only by modification of the order can WaterPro be assured, through foreclosure or settlement, of receiving the payment for the materials supplied to the projects described above.

11. That movant does not have, nor has it been offered, adequate protection for its interest in the project proceeds specified herein.

12. That the Debtor herein is not known to claim or possess any equity in the project proceeds identified herein.

13. That the property that is identified herein as the debtor due to Movant is not necessary to an effective reorganization.

14. If Movant is not permitted to foreclose its mechanics' lien and bond claims as hereinabove set forth, it will suffer irreparable injury, loss and damage.

15. Except as set forth herein, WaterPro seeks no additional relief by either its lien and/or bond claims.

The Motion requests that the court grant WaterPro the following relief:

(1) Modify the automatic stay so as to permit WaterPro to continue to foreclose its mechanics' lien and bond claims against the project commonly known as the Wastewater Treatment Plant No. 2 Expansion for the Village of New Lenox, Illinois, Project No. 72824, the proceeds of this project and/or the surety, or in the alternative for the Debtor to provide adequate protection to WaterPro Supplies Corporation;

(2) Modify the automatic stay so as to permit WaterPro to continue to foreclose its mechanics' lien and bond claims against the project commonly known as the Arbury Wastewater Reclamation Facility at Frankfort, IL. the proceeds of this project and/or the surety, or in the alternative for the Debtor to provide adequate protection to WaterPro Supplies Corporation;

(3) Order Debtor and/or the Trustee to Abandon as its own those construction project funds and job proceeds against which Movant claims and authorizing and/or directing Debtor and/or Trustee to confirm their lack of interest therein; and

(4) For all other relief the Court deems proper.

Exhibit "A" to the Motion is a copy of the Credit Application executed by the Debtor's Secretary/Treasurer on January 22, 1993 and given to WaterPro at the initiation of their contractual relationship (hereinafter: "Agreement").

Exhibit "B" to the Motion is a copy of the "Public Lien Notice" dated April 30, 1986 by WaterPro to the Debtor as Subcontractor on the New Lenox Project, the General Contractor, Semford Construction Co., Inc. (hereinafter: "Semford"), several officials of the Project Owner, the Village of New Lenox (hereinafter: "New Lenox"), and the Bonding Company, United States Fidelity and Guaranty Company (hereinafter: "USF & G"). The Notice was then sent prior to the filing of the Debtor's Petition on June 13, 1996. This Notice states:

You are hereby notified that WaterPro Supplies Corporation, located at 220 S. Westgate Drive, Carol Stream, IL 60188, doing business as an underground utility material supplier (hereinafter referred to as "Claimant") has been employed by Petroleum Piping Contractors under a subcontract between said parties dated October 12, 1995, for the amount of $32,391.47 to provide underground utility materials under the contract of SEMFORD CONTRACTING CO., INC., with you, VILLAGE OF NEW LENOX (hereinafter referred to as "PRIME CONTRACT"), said PRIME CONTRACT is dated May 8, 1995 for Wastewater Treatment Plant No. 2 Expansion for the Village of New Lenox, Illinois, Project No. 72824; that on February 1, 1996, the CLAIMANT completed all required to be done under said contract; and that there is due to the CLAIMANT, after all just credits have been deducted, on the present date therefore, the sum of $15,404.25 on said buildings; and that the CLAIMANT claims a lien therefore under 770 ILCS 60/23 (the Mechanics Lien Act of the State of Illinois), on all money, bonds, and warrants in the hands of the VILLAGE OF NEW LENOX, any officer or employee thereof, remaining unpaid to the said SEMFORD CONTRACTING CO., INC., any other contractor, for or on account of the construction of said Project being constructed pursuant to the terms, conditions and specifications to the PRIME CONTRACT, or any part thereof.

Exhibit "C" to the Motion, is a copy of a "Sub–Contractors and Materialman's Notice of a Bond Claim", by WaterPro on April 30, 1996 as to the New Lenox Project. This Notice was therefore also sent prior to the filing of the Debtor's Petition on June 13, 1996. This notice states as follows:

Pursuant to 30 ILCS 550/1 and 550/2, the undersigned, an officer or duly authorized agent of WaterPro Supplies Corporation, being first duly sworn on his oath flies this verified Notice making claim against the Bond provided by SEMFORD CON-TRACTING CO., INC. for the underground utility material and equipment furnished for the work done in accordance with SEMFORD CONTRACTING CO., INC.'s ("Prime Contractor") contract with the VILLAGE OF NEW LENOX pertaining to the Village of New Lenox, Illinois, Project No. 72824.

Names and Address of Claimant:

WaterPro Supplies Corporation

220 South Westgate Drive

Carol Stream, IL 60188

Names and Address of Contractor for Government:

Semford Contracting Co., Inc.

4616 West 137th Street

Crestwood, IL 60445

Name of Firm by whom claimant employed:

Petroleum Piping Contract

2041 164th Street

Hammond, IN 46320

Description of Public Improvement:

Wastewater Treatment Plant No. 2 Expansion for the Village of New Lenox, Illinois, Project No. 72824.

Amount of Claim:

$15,404.25

Surety:

UNITED STATES FIDELITY AND GUARANTY COMPANY

Oak Brook Regency Towers

1515 West 22nd Street

Oak Brook, IL 60521

Surety:

UNITED STATES FIDELITY AND GUARANTY COMPANY

P.O. Box 1138

160 Light Street

Baltimore, MD 21202

This Notice was directed to the Debtor, Semford, several officials of the Village of New Lenox, and USF&G.

Exhibit "D" to the Motion, is a copy of a "Notice and Claim for Lien" in the amount of $3,425.99, by WaterPro, and relates to the Arbury Wastewater Treatment Plan Project. This Notice is directed to the Project Owner, Citizen's Utilities Company of Illinois (hereinafter: "CUCI"), the Mutual National Bank of Chicago, Trust 3391 (hereinafter: "Trust"), the Debtor, and the General Contractor on the Arbury Project, Jay Dee Contractors (hereinafter: "Jay Dee"). This Notice stated that WaterPro completed its work on the Arbury Project on April 4, 1996, or prior to the filing of the Debtor's Petition on June 13, 1996. However, this Exhibit is not dated, and does not have the notary portion of the signature page executed. The Notice claims a lien on the Real Estate that comprises the Arbury Project, and all monies due from CUCI as Project Owner to the General Contractor, Jay Dee.

Exhibit "E" to the Motion, is a copy of WaterPro's "Sub–Contractors and Materialman's Notice of a Bond Claim" which was executed by WaterPro's attorney on June 14, 1996, and was served on the Debtor, Jay Dee, the General Contractor, the Surety, Liberty Mutual Insurance Company (hereinafter: "Liberty"), and CUCI, the owner of the Real Estate upon which the Arbury Project is located. This Notice was thus filed one day after the Debtor filed its Petition on June 13, 1996.

**B.**

*The Stipulation*

The Stipulation is in two parts. One part relates to the Arbury Project, and one part relates to the New Lenox Project. The Stipulation as to the Arbury Project, a *privately* owned project, provides as follows:

**(Arbury Waste Water Treatment Project)**

1. WaterPro Supplies Corp. ("Water-Pro") is an Illinois corporation located at 220 South Westgate Drive, Carol Stream, Illinois, and is a major supplier of underground utility materials.

2. Petroleum Piping Contractors ("Petroleum") is in the business of being a subcontractor and is located at 2041–164th Street, Hammond, Indiana.

3. Jay Dee Contractors ("Jay Dee") is in business as a contractor located at 150 Pine Street, Grayslake, Illinois.

4. Citizens Utility Company of Illinois ("CUCI") located at 608 West Winthrop, Addison, Illinois, is the owner of the real estate commonly known as the Arbury Waste Water Treatment Plant in Frankfort, Illinois.

5. Liberty Mutual Insurance Company ("Liberty") is a Massachusetts corporation having been authorized by the Commissioner of Insurance of the State of Illinois to transact insurance and bonding business within the State of Illinois.

6. That on January 23, 1995, CUCI entered into a contract ("Prime Contract") with Jay Dee whereby Jay Dee agreed to perform general contracting services on a construction project known as the improvement of the Arbury Waste Water Reclamation Facility ("Arbury Project").

7. That on or about January 23, 1995, Jay Dee submitted to CUCI a payment bond issued by Liberty for the Arbury Project.

8. Commencing August 2, 1995, Petroleum entered into a contract pursuant to purchase orders with WaterPro to supply underground utility material for and in the Arbury Project. Thereafter, WaterPro supplied the Arbury Project with materials pursuant to its contract of the value of $5,327.89. WaterPro completed its performance under its subcontract with Petroleum on April 4, 1996.

9. That WaterPro properly and timely invoiced Petroleum for the product it supplied to the Arbury Project; that Petroleum is entitled to credits on its account with WaterPro in an amount to be determined, but that there remains due and owing from Petroleum to WaterPro for the Arbury Project a sum in the range of $2,196.99 to $3,425.99.

10. That on June 14, 1996, WaterPro caused a Verified Notice of the bond claim to be filed with the owner by certified mail. (Stipulation, PP. 1–3).

The Stipulation as to the New Lenox Project, a *publicly* owned project, provides as follows:

**(New Lenox Wastewater Treatment Plant)**

1. WaterPro, an Illinois corporation, located at 200 South Westgate Drive, Carol Stream, Illinois, is a supplier of underground utility materials.

2. Petroleum is in the business of being a subcontractor located at 2041–164th Street, Hammond, Indiana.

3. Semford Contracting Co., Inc. ("Semford") does business as a contractor and is located at 4616 West 137th, Crestwood, Illinois.

4. The Village of New Lenox ("New Lenox"), 701 West Haven Avenue, New Lenox, Illinois, is the owner of the real estate commonly known as the Wastewater Treatment Plant No. 2 in New Lenox, Illinois.

5. United States Fidelity and Guaranty Company ("USF&G") is a Maryland corporation having been authorized by the Commissioner of Insurance of the State of Illinois to transact insurance and bonding business within the State of Illinois.

6. That on or about May 8, 1995, New Lenox entered into a contract ("Prime Contract") with Semford whereby Semford agreed to perform general contracting services on a constriction project known as the Wastewater Treatment Plant No. 2 Expansion for the Village of New Lenox, Illinois, Project No. 722824 ("New Lenox Project").

7. That on or about May 8, 1995, Semford submitted to New Lenox a payment bond issued by USF&G for the New Lenox Project.

8. That on August 2, 1995, Petroleum entered into a contract pursuant to pur-

chase orders with WaterPro to supply underground utility material for and in the New Lenox project. Thereafter WaterPro supplied the New Lenox project with materials pursuant to its contract of the value of $32,391.47. WaterPro completed its performance under its subcontract with Petroleum on February 1, 1995.

9. That WaterPro timely invoiced Petroleum for the product it supplied to the New Lenox project, that Petroleum is entitled to credits on its account with Water-Pro in the amount of $16,967.01, but that there remains due and owing from Petroleum to WaterPro for the New Lenox Project the sum of $15,404.25.

10. On April 30, 1996, WaterPro notified the Village of New Lenox in writing, by Notice of Lien, of the above mentioned sum due to WaterPro for materials furnished and of its claim for lien against the project and upon the money, bonds, or warrants due or to become due to Semford on the above-mentioned Prime Contract with said New Lenox; that at the time of filing of said notice, said New Lenox was still in possession of a substantial portion of the amounts due under the Prime Contract, all of which was done pursuant to 770 ILCE 60/23. That no court action has been filed regarding the same.

11. On April 30, 1996, WaterPro caused a verified Notice of a Bond Claim to be filed with the owner by certified mail. (Stipulation, PP. 3–5).

### III

### *Conclusions of Law and Discussion*
### A.

### *Sections 545(2), 546(b) and 362(b)(3) and their applicability to WaterPro's Motion*

■ A duly perfected mechanics' lien pursuant to the Illinois Mechanics' Lien Statute, is a "statutory lien" as defined by the Bankruptcy Code. § 101(53).[3] *See In re Saberman*, 3 B.R. 316, 318 (Bankr.N.D.Ill.1980); *In re Jennison–Wright Corp.*, 111 B.R. 146, 148 (Bankr.N.D.Ohio 1990) (applying Illinois law). Because such a mechanics' lien is statutory in nature, the issues raised by the parties may implicate § 545(2) of the Code. Section 545(2) states:

> The trustee may avoid the fixing of a statutory lien on *property of the debtor* to the extent that such lien—
>
> \* \* \* \* \* \*
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists; (emphasis supplied).

■ The nature, extent, and validity of statutory liens that fall within the scope of § 545(2) and whether the lien is enforceable against a bona fide purchaser are matters governed by state law. *In re Loretto Winery, Ltd.*, 898 F.2d 715, 718 (9th Cir.1990); *In re Pierce*, 809 F.2d 1356, 1359 (8th Cir. 1987). Under § 545(2), the enforceability of a statutory lien versus property of the debtor depends upon its state of perfection as of the date the petition was filed, and any post petition acts which can be taken under applicable state law to perfect the lien after the bankruptcy filing. *See In re Nucorp Energy, Inc.*, 902 F.2d 729, 733 (9th Cir.1990); *In re Pierce*, 809 F.2d at 1361. Thus, the court will apply the Illinois Mechanics' lien law to WaterPros' Motion, to the extent the motion does not implicate WaterPro's claims on the Payment Bonds.

---

**3.** 11 U.S.C. § 101(53) defines a statutory lien as follows:

"statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute; ...

The legislative history to § 101(53) states in part as follows: "A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples". H.R.Rep. No. 595, 95 Cong., 1st Sess. 314 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. (1978) U.S.Code Cong. & Admin.News 1978, 5787, 6271.

"Bona Fide Purchaser" as used in § 545(2), is not defined by the Bankruptcy Code. However, the Bankruptcy Code defines a "purchaser" very broadly to mean "transferee of a voluntary transfer, and includes immediate and mediate transferee from such a transferee". 11 U.S.C. § 101(43). In this case, any inquiry pursuant to § 545(2) would involve a determination of whether a statutory Mechanics' lien by WaterPro pursuant to Illinois law exists on property of the *Debtor's* Estate, which is not enforceable versus a bona fide purchaser of the Debtor's property on the date of the Debtor's Petition, or June 13, 1996. Section 1107(a) of the Code gives the Debtor, as a Chapter 11 Debtor–in–Possession, all the rights and powers of a trustee, with certain exceptions not applicable here. Thus, in an appropriate circumstance, the Debtor may invoke all of the rights and powers of a trustee under § 545(2).

 Section 545(2) refers to "property" and not "real property", and thus property of the Debtor's estate, includes not only real estate, but also includes any tangible or intangible personal property, such as any contract claims or choses-in-action the Debtor may have arising out of the Subcontracts existing between the Debtor and the General Contractors of the New Lenox and the Arbury Projects. *Cf.* § 544(a)(3), which gives the trustee the power to avoid any transfer by the debtor that is voidable by a "bona fide purchaser of *real* property", and § 544(a)(1), (2) which gives the trustee the voiding power of a judgment lien creditor as to *personal* property. Accordingly, under § 545(2) the trustee's derivative rights and powers as a purchaser of the debtor's property extends to personal property, as well as real property, and an unperfected statutory lien on personal property that is subordinate to the claims of a bona fide purchaser of personal property under local law can be defeated by the bankruptcy trustee under § 545.

 If the Debtor had been the owner of real estate upon which the New Lenox or Arbury Projects were being constructed, and a creditor of the Debtor, such as WaterPro, had failed to comply with the requirements of the Illinois Mechanics' Lien Act, any such lien claim would be unperfected, and would not stand up against the claim of a bona fide purchaser of real property allegedly subject to the unperfected mechanics' lien. *In re Germansen Decorating, Inc.*, 149 B.R. 522, 526 (Bankr.N.D.Ill.1993). Thus if the owner of the real estate filed bankruptcy, an unperfected mechanics lien claim would fall to a trustee's exercise of his strong arm powers under § 544(a). *Id.* (*citing In re Ian Homes Inc.*, 126 B.R. 933, 935 (Bankr.D.Md.1991), and *In re Joseph M. Eaton Builders, Inc.*, 93 B.R. 428, 431 (Bankr.W.D.Pa.1988)). However, in the case at bar the Debtor, with the rights and powers of a trustee, is not acting as a purchaser of property from the Debtor under § 545 as to any statutory Mechanics' lien asserted by WaterPro. In contrast to § 544(a) where the trustee has the status of a bonafide purchaser of real estate, and that of a lien creditor as to personal property, the trustee has no lien creditor status under § 545, but has purchaser status as to all property. Epstein, Nickles, and White, Bankruptcy, Vol. 2, § 6–62, p. 1 39 (West Pub. Co.1992). Section 545(2) is not applicable, and may not be invoked by the Debtor as to any construction contract claims WaterPro may have versus the General Contractors of the New Lenox Project and the Arbury Wastewater Treatment Facility Project; as to any statutory Mechanics' lien that may be asserted by WaterPro versus any public funds held by the Village of New Lenox; or, as to Real Estate owned by CUCI as to the Arbury Project as of the Petition date, as none of these actions by WaterPro are versus property of the Debtor's estate.

The Court concludes that § 545(2) is not applicable, because the Debtor does not own the real estate upon which the New Lenox or Arbury Projects are situated. Section 545(2) expressly provides that the trustee may avoid the fixing of a statutory lien on "property of the *Debtor*", to the extent that such lien is not perfected or enforceable against the bona fide purchaser that purchases the property at the time of the commencement of the case. The real property in question, upon which the improvements were made, was not owned by the Debtor prior to or at the commencement of the case, but was owned by the third-party Project Owners, the Village of New Lenox and CUCI. In addition, § 545(2) does not cloak the Debtor with the voiding powers of a bona fide pur-

chaser vis a' vis WaterPro as to any Mechanics' liens it may assert either versus the pubic funds held by New Lenox. *See In re Energy Contractors, Inc.,* 49 B.R. 139, 142 (Bankr.M.D.La.1985) (While a lien not timely perfected may be avoidable under § 545 with respect to property of the Debtor, there is no authority in § 545 for avoidance of a lien against property of third parties).

Section 546(b), applies to § 545 statutory liens, and provides as follows:

(b)(1) The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If—

(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and

(B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;

such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or commencement.

It should be observed that § 546(b) expressly deals with the *perfection* of a property interest existing as of the petition date and not the *enforcement* of an interest that has been perfected prior to the petition date. *Collier on Bankruptcy,* ¶ 546.03[2], p. 546–21 & n. 11 (L. King 15th ed. rev.) (collecting cases). In addition, an exception to the § 362(a) automatic stay is found at § 362(b)(3), which directly implicates § 546(b). Section 362(b)(3) states:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1 970, operates as a stay applicable to all entities, of—

\* \* \* \* \* \*

(3) under subsection (a) of this section, of any act to *perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title, or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title.*

Pursuant to § 362(b)(3), § 546(b) provides an exception to the general rule that the petition stays actions to perfect an interest and allows the post-petition perfection of a lien in limited circumstances. *Matter of Fullop,* 6 F.3d 422, 430 (7th Cir.1993). *See, e.g., In re Yobe Electric, Inc.,* 728 F.2d 207, 208 (3d Cir.1984) (Subcontractor's postpetition service of notice of intent to file Mechanics' Lien on owner was excepted from automatic stay, notwithstanding that notice triggered owner's right to withhold debtors general contractor funds, where under Pennsylvania law, materialman's lien commenced as of date materials were furnished and thus perfection of lien related back to date which preceded filing of petition); *In re Houts,* 23 B.R. 705, 706–07 (Bankr.W.D.Mo.1982) (Creditor could perfect Mechanics' Lien postpetition where under Missouri law, properly filed Mechanics' Lien relates back to commencement of work and work was done prior to filing of debtors' petition).

 Thus, if the holder of a claim that could be perfected by a statutory lien still has, as of the date of the filing of the debtor's petition, under applicable non-bankruptcy law, the right to perfect his lien, then the holder of the claim may perfect his interest, within the time allowed by applicable law against the trustee, notwithstanding the intervention of the debtor's petition. That is, the rights granted to a holder of a statutory lien claim under § 546(b) can only prevail against a trustee, if the holder either perfects pursuant to applicable law prior to the peti-

tion date, *see In re Claussen*, 118 B.R. 1009, 1016–17 (Bankr.D.S.D.1990), or the perfection relates back to a time prior to the filing of the petition. *See e.g., In re WWG Industries*, 772 F.2d 810, 812–14 (11th Cir.1985); *In re Jones & Lamson Machine Co., Inc.*, 113 B.R. 124, 129 (Bankr.D.Conn.1990) (applying Indiana law); *see also Collier on Bankruptcy*, ¶ 546.03[2][a]-[c],pp. 546–21 to 24 (L.King, 15th ed. rev.1997). Under Illinois Law, if a lien is properly perfected, the date of perfection relates back to the date the inchoate lien arose. *In re Saberman*, 3 B.R. at 318, *supra; Stoebner v. Horizon Fabricators, Inc.*, 153 B.R. 840, 841 (D.Minn. 1993) (applying Illinois law); *In re Jennison-Wright Corp.*, 111 B.R. 146, 147–48 (Bankr. N.D.Ohio 1990) (applying Illinois law).

■ Therefore, if WaterPro has a statutory Mechanics' lien which was properly perfected prior to the date of the filing of the Debtor's Petition on June 13, 1996, or Water-Pro could have taken appropriate action to perfect its statutory lien subsequent to the filing of the Debtor's Petition pursuant to Illinois law, which provides that a lien relates back to the date the inchoate lien arose, the perfection of any such statutory lien pursuant to § 546 will not be subject to the automatic stay pursuant to § 362(b)(3), and will be effective against the Debtor with the rights and powers of a trustee as a purchaser under § 545. However, it should be noted that the *time* to perfect a mechanics' lien under Illinois law is *not tolled* by the automatic stay, as § 362(b)(3) expressly provides that the stay does not apply to actions to perfect liens under § 546(b). *In re Germansen Decorating, Inc.*, 149 B.R. 522, 528 (Bankr.N.D.Ill.1993).

### B.

***Illinois law concerning Claims by Subcontractors and Suppliers versus Project Owners, General Contractors, and Bonding Companies as to the Public Projects of Municipalities.***

1. **Availability of a Statutory Mechanics Lien Claim by WaterPro against Public Funds under Illinois law as to the New Lenox Project:**

The Illinois Mechanics Lien Act, 770 ILCS 60/23(b), provides for a statutory lien by a subcontractor or supplier against public funds, where the subcontractor or supplier has contributed to the improvement of public property. Section 23 of the Illinois Mechanic's Lien Act as to public funds set out the manner by which a lien in public funds must be perfected. Section 23 states, in part, as follows:

*Any person who shall furnish material,* apparatus, fixtures, machinery or labor *to any contractor having a contract for public improvement* for any county, township, school district, city, *municipality* or municipal corporation in this State, *shall have a lien for the value thereof on the money,* bonds, or warrants *due or to become due the contractor having a contract with such* county, township, school district, *municipality* or municipal corporation in this State under such contract. *Provided, such person shall, before payment* or delivery thereof is *made to such contractor, notify the clerk* or secretary, as the case may be, *of the* county, township, school district, city, *municipality* or municipal corporation *of his claim by a written notice and furnish a copy of said notice at once to said contractor.* ... And, provided further, that such lien shall attach only to that portion of such money, bonds, or warrant against which no voucher or other evidence of indebtedness has been issued and delivered to the contractor by or on behalf of the county, township, school district, city, municipality or municipal corporation as the case may be at the time for such notice.

In addition, Section 23 sets out the procedure for the enforcement of the lien after the required notice has been given. Section 23 states, in part, as follows:

*The person so claiming a lien shall, within 90 days after giving such notice, commence proceedings by complaint for an accounting, making the contractor having a contract with the* county, township, school district, city, *municipality* or municipal corporation *and the contractor to whom such material,* apparatus, fixtures, machinery or labor was *furnished, parties*

*defendant* and shall within the same period notice the clerk or secretary, as the case may be, of the county, township, school district, city, municipality or municipal corporation *of the commencement of such suit by delivering to him or them a copy of the complaint filed. Failure to commence proceedings within 90 days after giving notice of lien pursuant to this subsection shall terminate the lien and no subsequent notice of lien maybe given for the same claim* nor may that claim be asserted in any proceedings pursuant to this Act. It shall be the duty of any such clerk or secretary, as the case may be upon receipt of the first notice herein provided for to because to be withheld a sufficient amount to pay such claim for the period limited for the filing of suit, unless otherwise notified by the person claiming the lien. *Upon the expiration of this period the money,* bonds or warrants so withheld *shall be released for payment to the contractor unless the person claiming the lien shall have instituted proceedings* and delivered to the clerk or secretary, as the case may be, of the county, township, school district, municipality or municipal corporation a copy of the complaint as herein provided, *in which case the amount claimed shall be withheld until the final adjudication of the suit is had.* Provided, that the clerk or secretary, as the case may be, to whom a copy of the complaint is delivered as herein provided may pay over to the clerk of the court in which such suit is pending a sum sufficient to pay the amount claimed to abide the result of such suit and be distributed by the clerk according to the judgment rendered or other court order. Any payment so made to such claimant or to the clerk of the court shall be a credit on the contract price to be paid to such contractor. (emphasis supplied).

770 ILCS 60/23(b) ("Illinois Mechanic's Lien Act as to Public Funds").[4]

The statutory lien provided by 770 ILCS 60/23(b) is a lien on "the moneys, bonds, or warrants due or to become due, the general contractor", and not upon the underlying real estate itself. *See Aluma Systems, Inc. v. Frederick Quinn Corp.,* 206 Ill.App.3d 828, 841, 151 Ill.Dec. 618, 626, 564 N.E.2d 1280, 1288 (1990); *Central Lime & Cement Co. v. Leyden–Ortseifen Co.,* 245 Ill.App. 48 (1928) (Statute gives no lien upon any property to any one, but only gives a lien to the subcontractor upon the money provided for the payment to the contractor). The rights available under this statute are cumulative to any rights which the creditor may have versus the contractor for the payment of any funds due to the contractor from the governmental entity. *Board of Ed. of School Dist. No. 108, Tazewell County, for Use of A.Y. McDonald Mfg. Co. v. Collom,* 77 Ill.App.2d 479, 483, 222 N.E.2d 804, 806–07 (1966); This statute does not require that the materialman deliver the goods to the principal contractor, but the statute applies to any person who may furnish material or labor to any contractor for any public improvement.

---

4. It should be noted that the rights created by the Illinois Mechanic's Lien Act are in derogation of the Illinois common law and are therefore to be strictly construed by a court applying the rights. *Board of Library Trustees of Village of Westmont for Use and Benefit of Ozinga Bros., Inc. v. Cinco Const., Inc.,* 276 Ill.App.3d 417, 424, 213 Ill.Dec. 3, 9, 658 N.E.2d 473, 479 (1995), ( *citing Mixer v. Billingsley,* 110 Ill. App.3d 239, 241, 66 Ill.Dec. 3, 5, 442 N.E.2d 275, 277 (1982)); *M.L. Ensminger Co. v. Chicago Title Trust Co.,* 74 Ill. App.3d 677, 678, 30 Ill.Dec. 627, 628, 393 N.E.2d 663, 664 (1979). Strict compliance with the terms of the statute are necessary. *Id.,* 276 Ill.App.3d 417, 213 Ill.Dec. 3, 658 N.E.2d 473; *Malkov Lumber Co. v. Serafine Builders, Inc.,* 1 Ill. App.3d 543, 548, 273 N.E.2d 654, 658 (1971); *Suddarth v. Rosen,* 81 Ill.App.2d 136, 138, 224 N.E.2d 602, 603 (1967). As a corollary to the requirement of strict construction, the Illinois Mechanic's Lien Act is a remedial statute which should be construed so as to accomplish the purposes intended by the legislature. *New Erie Coal Co. v. H. McMullen & Sons,* 247 Ill.App. 515, 519 (1928). The benefits of the statute include payment protection for suppliers and subcontractors who supply goods or labor which is consumed during the completion of the public project. *Northwest Water Commission v. Carlo V. Santucci, Inc.,* 162 Ill.App.3d 877, 898–99, 114 Ill.Dec. 132, 146–47, 516 N.E.2d 287, 301–02 (1987). In order for a subcontractor or supplier to receive the benefits of the statute, strict compliance with the terms of the statute is necessary. *Board of Library Trustees,* 213 Ill.Dec. at 9, 658 N.E.2d at 479; *Wilbur Waggoner Equipment Rental & Excavating Co. v. Johnson,* 33 Ill. App.3d 358, 342 N.E.2d 266, 269–70 (1975); *Green v. Johnson,* 151 Ill.App. 63, 65 (1909).

*Granite City Lime & Cement Co. v. Board of Education of School District No. 126*, 203 Ill. App. 134, 140 (1917).

▮▮▮ Filing a claim to the fund is a sufficient notice of the lien pursuant to this statute. *In re Freeman & Brooks*, 1 F.2d 430, 433–34 (7th Cir.1924) *cert. denied* 266 U.S. 628, 45 S.Ct. 126, 69 L.Ed. 476. The filing of a claim to the money which has been paid over by a governmental officer to the trustee in bankruptcy of a contractor, and is held by him is sufficient notice of the lien. *In re Freeman & Brooks*, 1 F.2d at 433–34. The lien against public project funds becomes perfected upon the subcontractor giving notice to the public body. *Spalding Lumber Co. v. Brown*, 171 Ill. 487, 492, 49 N.E. 725, 727 (1898); *Coles County v. Haynes & Lyons*, 134 Ill.App. 320 (1908) *aff'd*, 234 Ill. 137, 143, 84 N.E. 747, 749.

▮▮▮ Section 23 does not provide for a date certain by which a notice of lien must be filed versus public funds. Rather, the time for a supplier to give a notice of lien is limited by the continued existence of funds being due from the project owner to the general contractor, and in turn funds being due from the general contractor to the specific subcontractor on the particular portion of the prime contract for which the supplier furnished materials at the time the notice of lien is given. *Anderson "Safeway" Guard Rail Corp. v. Champaign Asphalt Co.* 131 Ill.App.2d 924, 266 N.E.2d 414, 417 (1971); *Housing Authority of Franklin County for the Use and Benefit of Smith–Alsop Paint &*

*Varnish Co. v. Holtzman*, 120 Ill.App.2d 226, 256 N.E.2d 873, 877 (1970).

Section 23 does expressly provide that within 90 days after giving notice to the municipality, and serving a copy of such notice on the contractor, the lien claimant shall commence proceedings by complaint for an accounting, making the contractor having the contract with the governmental entity *and* the contractor to whom the material was furnished, parties defendant, and that the failure to commence proceedings within 90 days after giving the notice of lien shall terminate the lien, and no subsequent lien may be given for the same claim in any proceeding under Section 23. Thus, in any a proceeding for an accounting under Section 23 by WaterPro, it is expressly required that the Debtor as the subcontractor to Semford, the General Contractor, of the New Lenox Project must be joined as a party defendant with the General Contractor. However, WaterPro was stayed from naming the Debtor as a party defendant in any proceeding for accounting pursuant to § 23, because of the § 362(a) automatic stay that became effective when the Debtor flied its Petition on June 13, 1996.

## C.

***The Relationship Between § 362(a), 4108(c), and the Illinois Mechanics Lien Act as to Public Funds, 770 ILCS 60/23(b), as made applicable to the New Lenox Projet*** [5]

▮▮▮ As soon as a petition in bankruptcy is filed the automatic stay provisions of 11

---

**5.** 11 U.S.C. § 362(a) provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 USC 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that

U.S.C. § 362 take effect, and prevent all pre-petition creditors from taking any action to collect their debts. *Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir. 1990); *In re Price,* 42 F.3d 1068, 1071 (7th Cir.1994). The automatic stay is effective upon the date of filing, and formal service thereof is not required. *Richard v. City of Chicago,* 80 B.R. 451, 453 (N.D.Ill.1987); *In re Miller,* 22 B.R. 479, 481 (D.Md.1982); *Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd.,* 38 B.R. 987, 998 (S.D.N.Y.1984). Thus, the automatic stay does not require actual notice to be effective. *In re Lile,* 103 B.R. 830, 836 (Bankr.S.D.Tex. 1989); *Matter of Carter,* 16 B.R. 481, 482–83 (W.D.Mo.1981), *aff'd.* 691 F.2d 390; *In re O'Connor,* 42 B.R. 390, 392 (Bankr.Ark.1984); *In re Stucka,* 77 B.R. 777, 781 (Bankr. C.D.Cal.1987); *In re Victoria Grain Co. of Minneapolis,* 45 B.R. 2, 6 (Bankr.Minn.1984).

█ In addition, actions taken in violation of the stay are void and without effect. *In re Schwartz,* 954 F.2d 569, 571 (9th Cir.1992); *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir.1990); *In re Smith,* 876 F.2d 524, 526 (6th Cir.1989); *In re Taylor,* 884 F.2d 478, 483 (9th Cir.1989); *Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir. 1984); *In re Smith Corset Shops, Inc.,* 696 F.2d 971, 976 (1st Cir.1982); *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir. 1984); *In re Marine Pollution Service,* 99 B.R. 210, 217 (Bankr.S.D.N.Y.1989); *In re Victoria Grain of Minneapolis,* 45 B.R. 2, 6–7, *supra,* (citing thirteen cases in accord). This Rule was succinctly stated in *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371 (10th Cir.1990) as follows:

> According to the automatic stay provisions of section 362, all proceedings against a debtor are stayed upon the debtor's filing of a petition for bankruptcy. 11 U.S.C. § 362(a)(1). It is well established that any action taken in violation of the stay is void and without effect. *Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 346, 84

L.Ed. 370 (1940) ("the action of the ... court was not merely erroneous but was beyond its power, void, and subject to collateral attack"); *Meyer v. Rowen,* 181 F.2d 715, 716 (10th Cir.1950); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816 (9th Cir.1985); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir. 1982); 2 *Collier on Bankruptcy,* § 362.11 (15th ed.1989).

*Id.,* 894 F.2d at 372–73. Actions taken in violation of the stay are void, even if the creditor has no notice of the stay. *In re Smith,* 876 F.2d 524, 526 (6th Cir.1989); *Richard v. City of Chicago,* 80 B.R. at 453, *supra,* (citing *In re Ellis,* 66 B.R. 821, 823 (N.D.Ill.1986), and *Rhyne v. Cunningham,* 59 B.R. 276, 278 (Bankr.E.D.Pa.1986)); *In re Clark,* 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986); *In re Scott,* 24 B.R. 738 (Bankr.Ala.1982); *In re Eisenberg,* 7 B.R. 683, 686 (Bankr.N.Y. 1980).

█ As a general rule the § 362(a) automatic stay only applies to the debtor, and does not apply to guarantors, sureties, insurers, or other persons liable on the debt. *United States v. Wright,* 57 F.3d 561, 562 (7th Cir.1995); *National Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705, 707 (7th Cir.1994); *Pitts v. Unarco,* 698 F.2d 313, 314–15 (7th Cir.1983).

The automatic stay restrained all acts and proceedings by WaterPro versus the Debtor, as enumerated under § 362(a) subject to the exceptions found in § 362(b)(3), as discussed previously. In addition, Section 108(c) provides, as follows:

> (c) Except as provided in section 524 of this title, *if applicable nonbankruptcy law,* an order entered in a nonbankruptcy proceeding, or an agreement *fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor,* or against an individual with respect to which such individual is protected under section 1201

arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

or 1301 of this title, and such period has not expired before the date of the filing of the petition, *then such period does not expire until the later of—*

(1) *the end of such period, including any suspension of such period occurring on or after the commencement of the case;* or

(2) *30 days after notice of the termination or expiration of the stay* under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim. (emphasis supplied).

*See, In re Montoya,* 965 F.2d 554, 557 (7th Cir.1992) (Section 108(c) implicitly incorporates a limitation period by preserving nonbankruptcy statutes of limitation which have not yet expired. Section 108(c) suspends time periods that determine whether a tax claim is entitled to priority and nondischargeability status). *Matter of Design Builders, Inc.,* 18 B.R. 392, 393–95 (Bankr.D.Idaho) (Six month period to enforce perfected mechanics' lien under Idaho statute was tolled by § 108(c)); *In re Victoria Grain of Minneapolis,* 45 B.R. 2, 7 (Bankr. D.Minn.1984) (Since automatic stay had neither terminated or expired, time for filing complaint under Minnesota law to foreclose Mechanics' lien which had attached prior to filing of petition, and which was perfected subsequent to filing of the petition, § 108(c) acted to extend the time to file a complaint to foreclose the mechanics' lien); *In re Bain,* 52 B.R. 58, 60 (Bankr.W.D.Va.1985) (Mechanics' lienholder under Virginia statute would not lose lien for failure to timely enforce it under state law because § 108(c) provides for an extension of time for commencing a civil action in a bankruptcy court on a claim against the Debtor); *In re Houts,* 23 B.R. 705, 707 (Bankr.W.D.Mo.1982) (Upon filing of bankruptcy, § 108(c) tolls the Missouri statute of limitations as to an action to enforce a perfected Mechanics' lien); *In re Cutty's–Gurnee, Inc.,* 133 B.R. 929, 931 (Bankr.N.D.Ill. 1991) (two year statute of limitations under Illinois Mechanics' lien statute to enforce liens versus property owner is tolled upon property owner filing bankruptcy). It was held in *Valley Transit Mix v. Miller,* 928 F.2d 354 (10th Cir.1991), that § 108(c) can also toll the statute of limitations of a nondebtor. In *Valley Transit,* the court held that the automatic stay imposed upon the debtor's filing a chapter 11 petition applied to a mechanics' lien foreclosure claim brought against the owners of property leased by the debtors, for the purposes of determining whether the time for the foreclosure of the claim was tolled by the filing of the petition, and therefore the tolling provisions of § 108(c) applied to the claim. *Id.,* 928 F.2d at 356.

As noted previously, the Illinois Mechanics Lien Act, 770 ILCS 60/23(b), requires that the person claiming the statutory lien against public funds, such as WaterPro, relating to the New Lenox Project, shall, within 90 days after giving notice, commence proceedings by complaint for an accounting, making *both* the contractor having the contract with the municipality, and the contractor to whom the materials were furnished parties defendant. Thus, in any action to enforce its statutory mechanics lien claim as to public funds, pursuant to 770 ILCS 60/23(b) WaterPro was required to join both the General Contractor, and the Debtor as the subcontractor to whom WaterPro furnished the materials.

It was stipulated that WaterPro completed its Contract with the Debtor as to the New Lenox Project on February 1, 1996 (Stipulation, P. 4, Par. 8), and that WaterPro notified the Project Owner, the Village of New Lenox, in writing of its Notice of Statutory Lien on April 30, 1996 (Stipulation, P. 4, pp. 4–5). The Debtor filed its Petition on June 13, 1996, or 44 days *after* the Notice of Lien was served by WaterPro on New Lennox on April 30, 1996. The automatic stay as to WaterPro went into effect on June 13, 1996. Thus, WaterPro had perfected its statutory lien on April 30, 1996, or *prior* to the Petition date. Accordingly, WaterPro does not require the application of § 362(b)(3), which is an exception to the § 362(a) automatic stay as discussed above, because it is not attempting to perfect its Notice of Lien postpetition. However, WaterPro does not seek to *perfect* its lien, it seeks to *enforce* it lien postpetition.

Pursuant to 770 ILCS 60/23(b), the person furnishing the materials, must enforce its lien by commencing its proceeding for an ac-

counting 90 days after notice of lien is given. Thus, WaterPro had to file its proceeding for an accounting 90 days after it gave Notice of its Lien on April 30, 1996, as the New Lenox Project on or before July 19, 1996. Accordingly, when the Debtor filed its Petition on June 13, 1996, WaterPro still had 36 days, or from June 13, 1996 to July 19, 1996, to file its suit versus the Debtor as the subcontractor to whom it supplied the materials for the New Lenox Project, and, Semford, the General Contractor, based on its Notice of Lien. Section 23(b) of the Mechanics Lien Act provides that if a suit is not filed within 90 days of the notice of lien, the lien terminates, and no subsequent notice of lien may be given for the same claim. The period for WaterPro to file a proceeding for an accounting versus Semford, the General Contractor, and the Debtor, as the subcontractor, would have expired on 90 days after the Notice of Lien was given by WaterPro on April 30, 1996, or on July 19, 1996, had the Debtor not filed its Petition on June 13, 1996.

■ However, the 90 day period to commence a proceeding for an accounting by WaterPro had not expired when the Debtor flied its Petition on June 13, 1996, and WaterPro was prohibited by the automatic stay as of the date the Debtor filed its Petition, or June 13, 1996, from naming the Debtor as a necessary party defendant with Semford, the general contractor, as required by Section 23(b) of the Illinois Mechanics Lien Statute. It has been held pursuant to § 108(c) that when a bankruptcy petition is filed by a contractor, who was a necessary party in a subcontractor's action to enforce a mechanics lien, the statute of limitations is tolled from the time that a necessary party to the enforcement of the suit files a bankruptcy petition until the automatic stay is modified to permit enforcement. *Pittman v. Manion*, 212 Ill.App.3d 342, 570 N.E.2d 1169, 1175 (1991). *Garbe Iron Works, Inc. v. Priester*, 99 Ill.2d 84, 75 Ill.Dec. 428, 430–31, 457 N.E.2d 422, 424–25 (1983). *See also, In re Chemisphere Partners*, 90 B.R. 380, 381–82 (Bankr.N.D.Ill.1988) (applying *Garbe*, and holding that the two year period provided by Illinois law for bringing suit to enforce mechanics lien was tolled, and remained tolled in cases where bankrupt debtors, whose property was subject to lien, were filed less than ten months following completion of the work by the contract lienor, and from the date of the petition, the contract lienors had been stayed from filing a suit to enforce its lien); *accord In re Cutty's–Gurnee, Inc.*, 133 B.R. 929, 931–32 (Bankr.N.D.Ill.1991). Accordingly, § 108(c) operates to toll the ninety day period within which WaterPro must enforce its lien by filing a proceeding for an accounting as provided by Section 23.

Accordingly, in order for WaterPro to proceed to enforce its statutory lien rights at this time, the § 362(a) automatic stay would have to be modified so that the Debtor can be joined as party defendant with the General Contractor Semford as to any proceeding for an accounting by WaterPro as required by Section 23. The only other alternative is to conclude that WaterPro should be stayed until any Chapter 11 Plan proposed by the Debtor is confirmed, *see* § 362(c)(2)(C) and § 1141, or the Debtor's case is dismissed, which would dissolve the stay as to the Debtor. *See* § 362(c)(2)(B). At that time, WaterPro would then have as additional 36 days to file its proceeding for an accounting versus the Debtor and Semford as General Contractor.

■ Section 362(d) states the automatic stay may be terminated, modified or conditioned for "cause, including 'lack of adequate protection. . . .' " The word "including", is not limiting. *See* 11 U.S.C. § 102(3). Thus, under appropriate circumstances the stay may be' terminated, modified or conditioned for reasons other than lack of adequate protection. Whether "cause" exists to vacate the stay pursuant to § 362(d)(1) is a matter committed to the Court's discretion. *Matter of C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir.1995); *Matter of Holtkamp*, 669 F.2d 505, 507 (7th Cir.1982); *Matter of Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985). In order to prevail, the party requesting modification of the stay must make a *prima facie* case that cause exists to do so. The burden then shifts to the debtor to show that it does not. *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285 (2d Cir.1990); *Matter of Udell* 149 B.R. 898, 901 (Bankr.

N.D.Ind.1992), *rev'd, Udell v. Standard Carpetland USA, Inc.*, 149 B.R. 908 (N.D.Ind. 1993), *rev'd, Matter of Udell*, 18 F.3d 403 (7th Cir.1994); 11 U.S.C. § 362(g). If the movant fails to make that initial showing of cause, its motion must be denied. *Sonnax Industries*, 907 F.2d at 1285.

Because "cause" is not defined in the Code, a finding that relief from stay is appropriate is determined on a case-by-case basis. *In re Robbins*, 964 F.2d 342, 345 (4th Cir.1992) (*Citing In re Mac Donald*, 755 F.2d 715, 717 (9th Cir.1985); 2 *Collier on Bankruptcy*, ¶ 362.07[1] at 362–68 to 69 (15th ed.1992)). When a creditor seeks relief from the stay in order to proceed in some other forum, the courts use a three-prong test. *Matter of Udell*, 18 F.3d 403, 410 (7th Cir. 1994); *Matter of Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir.1991). As the Court stated in *Fernstrom:*

"Cause" as used in § 362(d) "has no clear definition and is determined on a case-by-case basis." *In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir.1990). *See also In re Makarewicz*, 121 B.R. 262, 264 (Bankr.S.D.Fla.1990); *In re Revco D.S.*, 99 B.R. 768, 777 ([Bankr].N.D.Ohio 1989). Nevertheless, a number of themes emerge from the cases interpreting § 362(d)'s expansive language. As we wrote in *Matthews*, 739 F.2d at 251, "[s]uspension of [the automatic stay] may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." An influential district court opinion adopts a three factor test for determining whether "cause" exists, asking whether

(a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

(b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and

(c) the creditor has a probability of prevailing on the merits.

*In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D.Ill.1986) (bracketed text in original, internal quotations omitted). *See also In re Bock Laundry Machine*, 37 B.R. 564, 566 (Bankr.N.D.Ohio 1984).

*Id.*, 938 F.2d at 735. As noted by the court in *Matter of C & S Grain Co.*, 47 F.3d at 238, *supra*, a court may grant a party relief from the stay if it finds that the moving party's interest in the property can be better protected or for any other cause the court finds worthy.

The Court in *In re Johnson*, 115 B.R. 634 (Bankr.D.Minn.1989), set out a number of factors the court may consider, in defining whether the stay should be vacated, modified, or conditioned for "cause". Included among those factors are:

1. Whether issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter, *In re Lahman Mfg. Co., Inc.*, 31 B.R. [195] at 198 [(Bankr.D.S.D.1983)];

2. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit, *In re Fiedler*, 34 B.R. [602] at 604 [(Bankr.D.Colo. 1983)];

3. Whether the creditor has a probability of success on the merits, *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr.N.D.Ohio 1984);

*Id.*, 115 B.R. at 636.

The Court concludes that the stay as to WaterPro should be modified and conditioned. First, and foremost, the Debtor holds no claim based on contract as to the public funds held by the Village of New Lenox. Although, like WaterPro, the Debtor might have a right to file a Statutory Mechanics' lien against any public funds held by the Village of New Lenox, the general rule is that no claim thereto by the Debtor versus New Lenox, as the property owner, can be based on *contract*, as the Debtor, as a subcontractor with the general contractor, Semford, is not in privity of contract with the Village of New Lenox, and, thus, the Debtor has no contract claim versus the Village of

New Lenox as to any public funds dedicated to the project. Accordingly, the Debtor has no property right to § 541(a), based on contract versus the Village of New Lenox or any public funds held by it relating to the New Lenox Project. *See In re Barrett,* 39 B.R. 792, 794–95 (Bankr.D.Minn.1984) (It is the general rule that a subcontractor who has furnished labor and materials to a project has no right to recover from the owner where no contractual relationship exists between them) (*citing* Annot., 62 A.L.R.3d 288). Absent perfection of a mechanics' lien, subcontractors have been generally denied a right of recovery versus the owner. *Id.* (*citing Traubco Food Equipment Fabricators Inc. v. United Auto Workers,* 123 Ill. App.2d 106, 258 N.E.2d 817 (1970)). As noted by the Court in *In re T. Brady Mechanical Services, Inc.,* 133 B.R. 441, 446 (Bankr.N.D.Ill. 1991), Illinois law is clear that absent compliance with the provisions of the appropriate Mechanics' lien statute, a subcontractor has no right of action against the owner of the property, (*citing Canton v. Chorbajian,* 88 Ill.App.3d 1015, 1024, 44 Ill.Dec. 74, 410 N.E.2d 1166 (1980)).

The Court concludes that the joinder of the Debtor as a nominal party Defendant with the General Contractor, Semford, in any proceeding in the state court for an accounting in order for WaterPro to enforce its mechanics' lien versus any public funds held by the Village of New Lenox arising out of the New Lenox project, pursuant to Section 23(b) of the Illinois Mechanics' lien statute should be permitted. The issues are governed solely by state law. Any such litigation involves WaterPro, Semford, and the Village of New Lenox and the public funds which are not property of the Debtor's estate, and over which the court does not have jurisdiction. The Debtor is a necessary party defendant to any proceeding for an accounting by WaterPro, whereby full relief may not be accorded to all nondebtor parties without the Debtor's presence in the lawsuit. WaterPro has demonstrated a reasonable probability of success on the merits as to any such proceeding. Equitable considerations weigh heavily in favor of WaterPro, and the Debtor must bear some responsibility for the problem created for WaterPro in being un-

able at this time to enforce its Mechanics' lien against any public funds held by the Village of New Lenox dedicated to the public works project in question. WaterPro, as a supplier of the Debtor, should not be unduly delayed in enforcing its lien versus these funds simply because the Debtor has filed its Chapter 11 petition. The very purpose of the Illinois Mechanics' Lien Act as to public funds, which is to protect unpaid suppliers, such as WaterPro, would unnecessarily be thwarted. In addition, there will be no great prejudice to the Debtor's estate or the Debtor, and the hardship to WaterPro by denying modification of the stay considerably outweighs the hardship to the Debtor by modifying the stay. Thus, the stay shall be modified by the court to permit WaterPro to join the Debtor as a nominal Co–Defendant with Semford in any proceeding to enforce its lien as to the New Lenox project. However, if a state court shall adjudicate that the Debtor is indebted to WaterPro, it shall undertake no post-judgment proceedings whatsoever to enforce any such judgment.

### D.

### *The Claim by WaterPro against the General Contractor's Payment Bond under the Illinois Public Construction Bond Act as to the New Lenox Project.*

The provisions that are required to be contained in the bond to be provided by the contractor to a municipality for a public work are outlined in Section one of the Illinois Public Construction Bond Act, found at 30 ILCS 550/1. The Bond Statute provides, in part, as follows:

Except as otherwise provided by this Act, all officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties. The amount of such bond shall be fixed by such officials, boards,

commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise.

Each bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:

The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.

30 ILCS 550/1. ("Illinois Public Construction Bond Act").

 A claim on a Statutory Contractor's Bond given by a contractor for a public works project, may be asserted pursuant to Section Two of the Illinois Public Construction Bond Act, 30 ILCS 550/2, which provides as follows:

*Every person furnishing material* or performing labor, either as an individual or as a sub-contractor *for any contractor,* with the State, or a political subdivision thereof where bond or letter of credit shall be executed as provided in this Act, *shall have the right to sue on such bond* or letter of credit in the name of the State, or the political subdivision thereof entering into such contract, as the case may be, for his use and benefit, and in such suit the plaintiff shall file a copy of such bond or letter of credit, certified by the party or parties in whose charge such bond or letter of credit shall be, which copy shall, unless execution thereof be denied under oath, be prima facie evidence of the execution and delivery of the original; provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, as the case may be, liable to such sub-contractor, materialman or laborer to any greater extent than it was liable under the law as it stood before the adoption of this Act. Provided, *however, that any person having a claim* for labor, and material as aforesaid *shall have no such right of action unless he shall have filed a verified notice of said claim* with the officer, board, bureau or department awarding the contract, *within 180 days after the date of the last item of work or the furnishing of the last item of materials,* and shall have furnished a copy of such verified notice to the contractor within 10 days of the filing of the notice with the agency awarding the contract.

The claim shall be verified and shall contain (1) the name and address of the claimant; the business address of the claimant within this State and if the claimant shall be a foreign corporation having no place of business within the State, the notice shall state the principal place of business of said corporation and in the case of a partnership, the notice shall state the names and residences of each of the partners; (2) the name of the contractor for the government; (3) the name of the person, firm or corporation by whom the claimant was employed or to whom he or it furnished materials; (4) the amount of the claim; (5) a brief description of the public improvement sufficient for identification.

No defect in the notice herein provided for shall deprive the claimant of his right of action under this article unless it shall affirmatively appear that such defect has prejudiced the rights of an interested party asserting the same.

Provided, further, that *no action shall be brought until the expiration of 120 days after the date of the last item of work or the furnishing of the last item of materials*

*except in cases where the final settlement* between the officer, board, bureau or department of *municipal corporation* and the *contractor shall have been made prior to the expiration of the 120 day period,* in which case action may be taken immediately following such final settlement; *nor shall any action of any kind be brought later than 6 months after the acceptance* by the State or political subdivision thereof *of the building project* or work. Such action shall be brought only in the circuit court of this State in the judicial circuit in which the contract is to be performed. (emphasis supplied).

30 ILCS 550/2. ("Illinois Public Construction Bond Act").[6]

Section 541 (a) of Title 11 provides as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.[7]

The trustee succeeds to and has exclusive control over all assets of the estate, including causes of action. *In re Smith,* 640 F.2d 888, 892 (7th Cir.1981); *Anderson v. St. Paul Mercury Indemnity Co.,* 340 F.2d 406 (7th Cir.1965) (Act case). Whether a particular State cause of action belongs to the estate depends on whether under applicable State law, the debtor could have raised the claim as of the commencement of the case. *Matter of Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994). However, the estate's rights are limited to those had by the debtor, i.e., "whatsoever rights a debtor had at the commencement of the case continue in bankruptcy—no more, no less." *Matter of Jones,* 768 F.2d at 927, *supra, (quoting Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.1984)). Thus, the filing of a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest. *Matter of Sanders,* 969 F.2d 591, 593 (7th Cir.1992). A trustee takes property subject to the same restrictions that existed at the commencement of the case, and to the extent an interest is limited in the hands of a debtor, it is equally limited as property of the

---

**6.** While the notice requirements of the Illinois Public Bond Construction Act can satisfy the notice requirements under the Illinois Mechanics Lien Act, the Bond Act provides an alternative remedy to that afforded by the Illinois Mechanics Lien Act, and the notice must be drafted to provide sufficient notice of both remedies in order to accomplish both statutory requirements. *Walker Process Equipment, a Div. of McNish Corp. v. Advance Mechanical Systems, Inc.,* 282 Ill.App.3d 452, 458, 217 Ill.Dec. 947, 951, 668 N.E.2d 132, 136 (1996). The filing of the notice containing information required by the statute is a condition precedent to maintenance of the cause of action on bond, and a complaint which fails to allege the giving of this notice is fatally defective. *McWane Cast Iron Pipe Co. v. Aetna Cas. & Sur. Co.,* 3 Ill.App.2d 399, 402–03, 122 N.E.2d 435, 436–37 (1954). And a subcontractor's timely correspondence sent to the board of public works enclosing claims for material furnished was substantial compliance with the requirement of the statute as a prerequisite to suit on the contractors bond. *City of DeKalb for Use of International Pipe & Ceramics Corp. v. Somsin,* 32 Ill.2d 284, 289, 205 N.E.2d 254, 257 (1965) *see also Board of Ed., Northfield Tp. High School Dist. No. 225, Cook County, for Use of Palumbo v. Pac. Nat. Fire Ins. Co.,* 19 Ill.App.2d 290, 298–99, 153 N.E.2d 498, 503 (1958).

**7.** The determination of what property rights the debtor has on the petition date is created and defined by state law, unless some federal interest requires a different result. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992); *UNR Indus., Inc. v. Continental Casualty Co.,* 942 F.2d 1101, 1103 (7th Cir. 1991), *cert. den.* 503 U.S. 971, 112 S.Ct. 1586, 118 L.Ed.2d 305 (1992); *Koch Refining v. Farmers Union Cent. Exchange,* 831 F.2d 1339, 1343 (7th Cir.1987); *Matter of Jones,* 768 F.2d 923, 927 (7th Cir.1985).

The scope of "property" under § 541 is necessarily limited to the property owned by the debtor at the commencement of the case. *Matter of Carousel International Corporation,* 89 F.3d 359, 361 (7th Cir.1996) (*citing, Matter of Wayco, Inc.,* 947 F.2d 1330, 1333 (7th Cir.1991)). However, the bankruptcy estate does not "own" property solely because the estate has a claim of ownership; the estate's property does not include the things to which it lays claim until the matter is adjudicated and resolved by the parties. *Id.,* 89 F.3d at 362.

estate. *Id.* Thus, any defense, legal or equitable, which might have been raised against the debtor may be raised against the trustee. 4 *Collier on Bankruptcy,* ¶ 541.10 (L. King 1 5th ed.). The trustee is "subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3rd Cir.1989) (*Quoting, 2 Collier on Bankruptcy,* ¶ 323.02(4)).

Any claims that the Debtor, as subcontractor, had as of its Petition date versus: Semford, the General Contractor; USF & G, the Bonding Company; or the public funds held by the Village of New Lenox, as the project owner of the New Lenox Project, a public project, were property of the Debtor's estate pursuant to § 541(a). However, it has consistently been held that a payment bond given by a bankrupt debtor as principal, and a surety for the bankrupt debtor to a project owner is not property of a bankrupt debtor's estate. *See In re Jay Forni, Inc.,* 33 B.R. 538, 541 (Bankr.N.D.Cal.1984); *In re Capitol–York Construction Corp.,* 43 B.R. 52, 55–56, (collecting cases) *Later Proceeding* 52 B.R. 317 (Bankr.S.D.N.Y.1985); *In re Lockard,* 884 F.2d 1171, 1176–79 (9th Cir.1989); *In re Apache Construction, Inc.,* 34 B.R. 415, 417 (Bankr.D.Or.1983); *Matter of Dore and Associates Contracting, Inc. v. American*

*Druggists' Ins. Co.,* 54 B.R. 353, 358 (Bankr. W.D.Wis.1985).

■ In this case, the Payment Bond on the New Lenox Project was not even executed by the bankrupt Debtor as a principal in favor of the New Lenox as the Project Owner, but was executed by Semford, the General Contractor of the New Lenox Project, to whom the Debtor stood in relation as a subcontractor. Thus, any assertion by the Debtor that the surety bonds are property of the Debtor's estate pursuant to § 541(a), and that any claims against said bond by a third-party, such as its supplier WaterPro, is thus protected by the § 362(a) automatic stay is misplaced. Thus, the Court concludes that the stay has no application to any act or proceeding by WaterPro to enforce its Claims *versus* the Sureties on the New Lenox Project. In addition, as noted previously, it is the general rule, that § 362(a) automatic stay only applies to the debtor, and does not apply to guarantors, sureties, insurers, or other persons liable on the debt. *United States v. Wright,* 57 F.3d 561, 562 (7th Cir.1995); *National Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705, 707 (7th Cir.1994); *Pitts v. Unarco,* 698 F.2d 313, 314–15 (7th Cir.1983).[8]

The Ninth Circuit in the case of *In re Lockard,* 884 F.2d 1171 (9th Cir.1989) in

---

**8.** There are exceptions to this general rule. *See Matter of James Wilson Associates,* 965 F.2d 160, 170 (7th Cir.1992) (There may be an exception where the debtor is an indispensable party to the litigation) (*citing United States v. Nicolet, Inc.,* 857 F.2d 202, 203 (3rd Cir.1988), and *In re Comcoach Corp.* 698 F.2d 571, 574 (2nd Cir. 1983)); *Matter of Fernstrom Storage and Van Co.,* 938 F.2d 731, 736 (7th Cir.1991) (First, the stay can apply when there is such an identity of the debtor and a third party defendant, that the debtor may be said to be the real party defendant, and that a judgment against the third-party defendant will in effect be a judgment and a finding against the debtor, *citing A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986), *cert. den,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177, and secondly the stay can operate where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan "irreparable harm", *citing; In re Lomas Financial Corp.,* 117 B.R. 64, 67 (S.D.N.Y.1990), *remanded,* 932 F.2d 147 (2nd Cir.1991), and *In re North Star Contracting Corp.,* 125 B.R. 368, 370 (S.D.N.Y.

1991)). In *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), *cert. den.* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), cited favorably by the Seventh Circuit in *Fernstrom Storage,* the Court held Section 362(a)(1 ) stays actions against the debtor, and arguably against those whose interests are so intimately intertwined with the debtor that the latter may be said to be the real party in interest, while § 362(a)(3) directs the stay of any action whatsoever against a debtor, or a third party to obtain possession, or exercise control over property of the debtor. *Id.,* 788 F.2d at 1001.

The *Robins* court gave an illustration of such a situation as being a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them, and that to refuse application of the statutory stay in such a case would defeat the very purpose and intent of the statute. *Id. (citing, In re Metal Center,* 31 B.R. 458 (Bankr.D.Conn.1983); *Seybolt v. Bio–Energy of Lincoln Inc.,* 38 B.R. 123 (Bankr.D.Mass.1984); and *In re Brentano's,* 27 B.R. 90 (Bankr.S.D.N.Y. 1983)).

denying the application of a stay to a surety noted as follows:

> The centerpiece of Lockard's arguments seems to be a 1986 decision by the Fourth Circuit Court of Appeals. *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir.1986), *cert denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). In that case, the court enjoined multiple post-petition actions against a non-debtor third-party insurer by creating an "unusual situation" exception to the general rule that a stay under 11 U.S.C. § 362(a)(1) is available only to debtors and not to third-party defendants or co-defendants. *Id.*, 788 F.2d at 999. The *A.H. Robins* court defined an "unusual situation" as follows:

> > "This 'unusual situation', it would seem, arises when there is *such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant*, and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."

*Id.* at 999 (emphasis added). On the other hand, the *A.H. Robins* court limited its exception by excluding from the coverage of the automatic stay those cases in which the third party is "independently liable" to the creditor. *Id.*

> Other courts have since recognized the *A.H. Robins* "unusual situation" exception. *See e.g., In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147–48 (5th Cir.1987). We have not explicitly recognized such an exception, and we decline to do so in this case.

> Even if we were to adopt the rule of *A.H. Robins*, it is far from clear that Lockard's bankruptcy presents an "unusual situation" warranting a departure from the text of section 362. As the *McLean* court observed, a surety has obligations that are "independent" and primary, not derivative of those of the debtor. [*In re McLean Trucking Co.*] 16 Bankr.Ct. Dec. [141] at 147–48, 74 B.R. 820 [(Bankr.W.D.N.C. 1987)] (*Citing*, 74 Am.Jur.2d § 183). In such a case, the *A.H. Robins* exception simply does not apply. *McLean*, 74 B.R.

at 828; *see also, In re Bialac*, 712 F.2d [426] at 428–29 [(9th Cir.1983)].

*Id.*, 884 F.2d at 1179.

██ It has been held that a bond required for a public works project imposes direct liability upon the surety on the bond, and the entry of judgment versus the surety alone for materials provided as to such a project was not erroneous, even though the subcontractor was a party to the suit. *Barker–Lubin Co. v. Wanous*, 26 Ill.App.2d 151, 167 N.E.2d 797 (1960) (abstract opinion). A suit versus the surety can be pressed on the bond without asserting anything against the subcontractor, regardless of whether the subcontractor was party to the suit. *Id.* This conclusion is in accord with the general rule that while the contract of a surety is, in a sense, accessory or collateral to a valid principal obligation contracted by another person, the surety's obligation to the creditor of the principal is said to be direct, primary and absolute. In other words, the surety is directly and equally bound with his principal. Am.Jur.2d, *Suretyship* § 1. In addition, it is the general rule that pursuant to a public works bonding statute, such as the sureties labor and material bond (payment bond), the obligation of the surety thereon constitutes a primary and direct obligation of the surety to the subcontractors and materialmen without reference to the liability of the public works contractor, the principal on the bond. 17 Am.Jur.2d, *Contractor's Bonds*, § 66. It is also the general rule that under a "Little Miller Act" such as 770 ILCS 550/2, a provision providing that the claimant shall have a right of action against the contractor and surety for the amount due him, the right under the statute is one of direct action against the contractor and surety without the joinder of the subcontractor. *Id*, § 215. In this case, even if *arguendo*, WaterPro were required to join both, Semford, the General Contractor, and USF&G, the surety, in any action on the Payment Bond, because the Bond was in the name of Semford as the General Contractor as principal, and not the Debtor, as principal, WaterPro does not need relief from the automatic stay as to the Debtor, as the Debtor is not a necessary party defendant to any state court action by WaterPro on the Bond.

The Court notes that 30 ILCS 550/2 provides that a judicial proceeding must be brought by the Claimant on the Payment Bond within 180 days of the final acceptance of the project by the municipality. The court was not advised by the parties by virtue of their Stipulation if there was a final acceptance of the New Lenox Project. The court cannot, and need not, speculate on the validity of WaterPro's claim versus the Payment Bond. This is a matter that must be resolved on the merits between WaterPro and the Bonding Company in the appropriate nonbankruptcy forum.

### E.

#### *The Arbury Wastewater Reclamation Facility Project and the claims by Water-Pro versus the Payment Bond thereon*

Pursuant to the Stipulation between WaterPro and the Debtor, the parties entered into their Agreement on August 2, 1995, and pursuant to certain purchase orders by the Debtor, based on that Agreement, WaterPro provided materials to the Debtor for improvements in the Arbury Project in the sum of $5,327.89. The Stipulation also provided that WaterPro completed its performance under its Contract with the Debtor on the Arbury Project on April 4, 1996. (Stipulation, P. 2, Par. 8). In addition, on June 14, 1996, WaterPro filed a Notice of its Bond Claim on the Project Owner by certified mail on June 14, 1996. (Stipulation, P. 3, Par. 10). Thus, because the Debtor filed its Petition on June 13, 1996, the Contract between the Debtor and WaterPro on the Arbury Project was completed prior to the Debtor's Petition, or on April 4, 1996, and the Bond Claim Notice to Project Owner by WaterPro was given on June 14, 1996, or postpetition. As opposed to the New Lenox Project, which was a public project, the Project Owner of the Arbury Project was CUCI, a private project owner. Thus, the Illinois Public Construction Bond Act is not applicable to WaterPro's Claim on the Payment Bond provided by Liberty as surety on the Arbury Project. For the same reasons as discussed by the Court above relating to the New Lenox Payment bond, the bond on the Arbury Wastewater Treatment Facility Project

is not property of the Debtor's bankruptcy estate. Thus, the June 14, 1996 Notice given by WaterPro, one day after the Debtor filed its Petition is not void as being in violation of the § 362(a) automatic stay. Since the Bond is not property of the Debtor's bankruptcy estate, pursuant to § 541(a), relief pursuant to § 362(a) need not be afforded by this Court in order for WaterPro to proceed on its Bond Claim on the Arbury Project, for the same reasons as discussed above relating to the Bond on the New Lenox Project.

### IV

### CONCLUSION

As to both the New Lenox Project, and the Arbury Project, the Payment Bonds provided to the project owners by the Debtor's General Contractors were not property of the Debtors' estate pursuant to § 541(a) and, thus the § 362(a) automatic stay does not restrain WaterPro from proceeding on such bonds, either under the Illinois Public Construction Bond Act as to the New Lenox Project, a public project, or based on Illinois Common law, as to the Arbury Project, a private project. In addition, the stay need not be modified in order to permit WaterPro to join the Debtor in any state court action on the Bond, as the Debtor is not a necessary party thereto.

As to the New Lenox Project, pursuant to 770 ILCS 60/23(b), the Debtor is a necessary party with Semford, the General Contractor, to any proceeding for an accounting. In order for WaterPro to enforce its lien, the stay shall be modified as to WaterPro, so that it may join the Debtor in any such proceeding as a nominal defendant; provided, however, no proceeding shall be taken by WaterPro to collect any monies due by the Debtor to it, and no money judgment shall be entered versus WaterPro.

It is therefore, ORDERED, ADJUDGED and DECREED that § 362(a) Automatic Stay does not apply to any claims by Water-Pro as to any project bond provided on either the New Lenox or Arbury Projects. And it is further,

ORDERED, ADJUDGED and DE-CREED, that the § 362 automatic stay is modified as to WaterPro, and it may join the Debtor as a nominal Defendant with the General Contractor, Semford, as to the New Lenox Project in any proceeding for an accounting to enforce its lien rights under 770 ILCS 60/23(b); provided, however, WaterPro shall undertake no proceedings to collect any monies due by the Debtor to it, or enter any money judgment versus the Debtor.

The Clerk shall enter this Order on a separate document pursuant to Fed. R. Bk. P. 9021.

**SO ORDERED.**